(No. 19612.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* H. S. GALLERY, Plaintiff in Error.

*Opinion filed October 19, 1929—Rehearing denied Dec. 5, 1929.*

JAMES P. ST. CERNY, and JESSE PEEBLES, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, VICTOR HEMP-HILL, State's Attorney, and ROY D. JOHNSON, for the People.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

The grand jury of Macoupin county returned an indictment to the September term of the circuit court, 1928, against H. S. Gallery and William A. McDonald, charging them with the crime of larceny. They pleaded not guilty, and the jury returned a verdict of not guilty as to McDonald but found Gallery guilty in manner and form as charged in the indictment. Motions for a new trial and in arrest of judgment were overruled and Gallery was sentenced to the penitentiary. He has sued out this writ of error to review the judgment.

The property charged to have been stolen was 100 boxes of cigars, each box containing 100 cigars, and the value of the property was alleged to be $340. The cigars, contained in a carton, were loaded in a freight car of the Chicago and Northwestern Railway Company at Pekin, Illinois, and consigned to the Benld co-operative store at Benld, Illinois. The proof showed they were loaded in a merchandise car at Pekin on April 16, 1927. The car was billed through to Benld, was sealed and placed in a freight train which left Pekin for Benld about one o'clock Sunday morning, April 17. The train arrived at Benld about six

o'clock the same morning. It was a rather heavy train and the car in which the cigars were placed was No. 41518. William A. McDonald was the conductor in charge of this train, and Gallery, the defendant, was one of the brakemen. The train arrived in the yards at Benld, and the train crew, after doing the necessary work in the yards, left for breakfast and to rest and sleep until called for their return trip to Pekin. The cigars and way-bill were never delivered to the consignee but the car was placed in a train to return to Pekin and left Benld about 3:30 P. M. on April 17. The cigars were thrown from the train on the railroad right of way a short distance north of Benld while the train was on its return to Pekin. Part of the cigars were picked up by George Rocker, placed in a Ford coupe he was driving and delivered by him to a miners' club called the Prosperity Club. Rocker testified that on Sunday, April 17, he was introduced to Gallery by Fred Lindquist at the latter's house and Gallery told him he had some cigars to sell and asked him to find a purchaser. Rocker went to the club at the coal mining camp, arranged to sell the cigars at the price fixed by Gallery, returned to Lindquist's house and informed Gallery. He said Gallery then told him to meet the Northwestern train at Miners' crossing about four o'clock that afternoon and the cigars would be there unloaded. Rocker went to the place arranged and testified that when the freight train came by he saw Gallery at the window of the caboose, and he threw a number of cigar boxes out of the window on the right of way about 100 feet north of the crossing; that he (Rocker) gathered up all he could put in his Ford coupe, and while he was doing so a man whom he did not know, but who was Hobard Graham, a car repairer employed by the railroad company, came along and saw Rocker loading the cigars left on the right of way. Graham testified to the same thing. He said he did not know Rocker but took the license number of his car; that Rocker, after filling his car, told him to help

himself to the cigars. A switch engine of the railroad company came along soon after, was stopped by Graham, and the cigars left by Rocker were loaded on the engine and taken to the Benld agent. Graham said he returned to the depot in Benld and told the company's agent about the cigars. The freight train carrying the cigars was not scheduled to stop at Miners' crossing, where the cigars were unloaded, but it stopped there. The engineer testified he did not know it was a stop and that he did not stop the train there. The conductor so testified, as did also the brakeman who rode on the front of the train. Gallery rode in the caboose, and the testimony is that the train could be stopped by the air-brake valve from the caboose. The conductor and the head brakeman got off the train when it stopped near the crossing to see what the trouble was, and after the train had been stopped a little while it started up, and they boarded it and went on their trip. This is by no means all of the testimony, but it is the most important evidence.

Plaintiff in error insists the evidence was wholly insufficient; that the most damaging part of it was the testimony of Rocker, who, according to his own evidence, was an accomplice of Gallery, and his testimony should be received with great caution and acted upon after due deliberation. Rocker was arrested and gave bond. He was indicted, but it does not appear that he has ever been prosecuted further for the offense. Plaintiff in error correctly states the rule of law governing the testimony of an accomplice, but it has been repeatedly held that a conviction may be sustained on the evidence of a confessed accomplice. (*People* v. *Baskin,* 254 Ill. 509; *People* v. *Feinberg,* 237 id. 348.) Many other cases sustain the same proposition. In *People* v. *Johnson,* 317 Ill. 430, the court said: "A conviction may be had on such testimony, although uncorroborated, if it is of such a character as to satisfy the jury, beyond a reasonable doubt, of the guilt of the defendant."

Much stress is laid by counsel for plaintiff in error in their brief on the fact that the car was sealed in Pekin before it was started on its trip to Benld and there was no evidence of the seal ever having been broken. There was testimony that the freight car door could have been opened sufficiently to admit a man's body if the end of the door opposite to that on which the seal is placed was pried off the slide and then sprung outward. The proof also disclosed that there are methods of manipulating car seals. There was no testimony that either of these things was done, but the physical fact exists that the cigars were removed from the car and they could not have removed themselves. Somebody removed them, and the testimony was that Gallery had possession of them and threw them off of the train on its return to Pekin, in accordance with a previous arrangement with Rocker. Gallery's testimony offers no suggestion that anyone else had anything to do with the removal of the cigars, or the possession of them thereafter, until they were thrown from the train on its return to Pekin at Miners' crossing. There is no doubt from the testimony that somebody removed the cigars from the car, and if the jury believed the testimony of Rocker it was sufficient to find that Gallery was the guilty party. It sufficiently appears from the evidence that Rocker is not a high-class citizen, but the facts and circumstances tend to corroborate his testimony that Gallery was the man who had the cigars at Miners' crossing and threw them off of the train.

Fred Lindquist, who was a witness for the People, when placed on the stand appeared to be an unwilling witness. His memory largely failed him. He had made a statement in writing to an officer of the railroad company some time before, and when placed on the witness stand to testify said he could not remember what he had stated. The State's attorney asked permission of the court, which was granted, to ask leading questions. The State's attorney

quoted from Lindquist's statements and asked him if he did not make them to an officer of the company. The statements were not introduced in evidence. The witness pretended not to remember whether he had made them or not, but said whatever statements he made were so made at the suggestion of the officer of the railroad company. We do not think the court abused its discretion in permitting the State's attorney to ask the witness leading questions. It is within the discretion of the court to permit leading questions where a witness appears unfriendly or has told a different story from what he testified to at a former time. Counsel is justified in such cases in asking leading questions for the purpose of refreshing the recollection of the witness and not for impeachment. *People* v. *Curran*, 286 Ill. 302; *Hyde* v. *United States*, 225 U. S. 347; *Neill* v. *Brackett*, 135 N. E. (Mass.) 690.

The indictment alleged the railroad company was a corporation. Its charter was not introduced in evidence by the State nor any proof made directly that it was a corporation, in making the State's case in chief. After the defense had rested its case the State proved by a witness that the railroad company was a Wisconsin corporation. This was done over the objection of defendant, and it was error. The allegation that the railroad company was a corporation was material and should have been proven. Plaintiff in error's counsel state in their brief in the statement of the case, shown by the proof: "This railroad owns a line which extends from the city of Pekin, in Tazewell county, southward through Sangamon and a part of Macoupin county, on down to the village of Benld. At this last mentioned point the Superior Coal Company owns and operated a number of coal mines and the Northwestern Railway Company hauls the coal that is there produced and obtained, northward on this track. Incidentally considerable freight is carried to and delivered to the various towns along the route but no passenger business of any nature

586

is carried on." This was sufficient proof of user. *People v. Fitzgerald*, 297 Ill. 264; *People v. Connors*, 301 id. 112.

One instruction offered by defendant was refused by the court, and the ruling is complained of. No other instruction was precisely like it, but the law as stated in the refused instruction was in substance stated in given instructions. Plaintiff in error says the statement made therein was not in any other instruction. This is a misapprehension. The substance of the refused instruction was contained in defendant's given instruction No. 7 as it appears in the abstract.

No error was committed during the trial that would justify a reversal of this judgment. The question of the sufficiency of the proof was for the jury to determine. It was conflicting and guilt was specifically denied by plaintiff in error. It was a question for the jury to determine whether the evidence of guilt was credible and whether it should be believed in preference to the testimony of defendant.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*