THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN W. JONES, a/k/a CHARLIE BROWN, Defendant-Appellant.

(No. 56263;

First District (4th Division)—July 25, 1973.

James J. Doherty, Public Defender, of Chicago, (Shelvin Singer, Assistant Public Defender, of counsel,) for appellant.

Bernard Carey, State's Attorney, of Chicago, (Kenneth L. Gillis, Patricia Bobb, and John B. Adams, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

On April 2, 1971, John W. Jones, also known as Charlie Brown, was found guilty of armed robbery after a bench trial in the Circuit Court of Cook County, and he was sentenced to the Illinois Penitentiary for a term of two to five years.

The issues on review are whether an off duty policeman working as a security guard has a duty to give *Miranda* warnings during general on the scene questioning of one believed to have committed a crime, and whether the use of physical evidence at trial not previously disclosed to the defendant was prejudicial.

On December 12, 1970, at about 1:30 A.M., the complaining witness, the real Charlie Brown, parked his daughter's car in a garage near his apartment at 3442 South Giles in Chicago. (For clarification it should be noted the defendant was impersonating the real Charlie Brown, who was the complaining witness.) When he got out of the car in the garage, he was accosted by two men with a rifle who demanded his money. They took his wallet which contained $29.00 in cash, a Sears credit card, a driver's license, a Social Security card, and a voter registration card.

Brown reported the robbery and gave a description of the two men to the police. Police officer Thomas J. O'Connor, who investigated the robbery, testified the area was well lit from a light in the alley, and he had no trouble seeing Charlie Brown while they were inside the garage.

Later that morning Charlie Brown contacted Sears to report the theft of his credit card. At about 3:30 that afternoon, Mr. Harold Lockett, chief of security at the Sears store at 6233 South Halsted, and William

Parker, an off duty Chicago policeman, who was employed part time as a security guard, received a call that a stolen or lost plate was being used in the men's furnishing area of the store. Lockett and Parker went to the department and confronted the two men. Parker identified himself as a Chicago police officer. Lockett asked them to step over to the side where he requested further identification. Jones insisted he was Charlie Brown and produced a Social Security card and a driver's license corroborating his claim. The description on the license was of a man above the age the defendant appeared to be and, consequently, the defendant and his companion were asked to go to the security office with Lockett and Parker, where color photographs were taken with a polaroid camera. These photographs were then placed on a bulletin board along with 60 to 65 others. The next day the real Charlie Brown went to the Sears store to claim his personal possessions and, while in the security office, he observed the bulletin board and identified the pictures of the defendant and his companion as being the ones who robbed him.

Mr. Lockett testified the defendant was in the security office 35 to 40 minutes until police officers arrived to take them into custody. At no time prior to the questioning on the floor or in the security office did the defendant receive any warnings pursuant to *Miranda v. Arizona* (1965), 384 U.S. 466, 86 S.Ct. 1602.

At trial, officer William Parker identified a Sears charge plate, a Sears charge slip, a Social Security card, and a voter registration card as being the same items seized from the defendant on January 12, 1970. Over defense objections, these items were admitted into evidence.

The defendant contends it was error for the court to allow the prosecution to use statements taken by officer Parker during his questioning of the defendant at the Sears store. Specifically, the defense complains Parker asked Jones who owned the charge card and Jones replied that it was his. At trial this statement was introduced into evidence.

■■ Jones argues that even though Parker was working as a security officer, the detention and questioning of the defendant was done under color of his office as a police officer, because he had identified himself as such, and all police officers are authorized to make arrests even when not on duty; therefore, any questioning he might do would amount to custodial interrogation which would require *Miranda* warnings. However, in *People v. Parks* (1971), 48 Ill.2d 232, a defendant was found guilty of obtaining dangerous drugs by fraud. In that case police officers received a call from a pharmacist and apprehended the defendant as he was leaving the drug store. Without giving him *Miranda* warnings, the police asked the defendant whether he had made a purchase at the

pharmacy, for whom he made the purchase, and what his name was. The Supreme Court of Illinois held that such questions were general on the scene questions and, as such, did not require *Miranda* warnings. In the instant case questioning the defendant with respect to who owned the charge card was similarly within the scope of general on the scene questioning. We need not reach the question of whether an off duty policeman, working as a security guard, is required to give *Miranda* warnings during actual custodial interrogation.

Second, the defendant claims he was prejudiced when the court allowed the prosecution to use physical evidence which had not been disclosed pursuant to a discovery motion. A month prior to trial the defense requested an itemization of all physical evidence in its possession or control pertaining to the case the State intended to use at trial. The State responded the victim's Sears credit card was the only physical evidence in the case. The defendant argues he was caught completely by surprise when Parker identified exhibit 3, the Sears charge card, exhibit 4, a Sears charge slip, exhibit 5, a Social Security card, and exhibit 6, a voter's registration card, all allegedly taken from Jones. The defendant's counsel objected to admitting the exhibits into evidence and the State indicated to the court the exhibits were brought to its attention just that morning and defense counsel had an opportunity to observe them and talk to the witnesses, the same as the State did. Defense counsel did not ask for a continuance or make any showing of prejudice and proceeded with the trial. It is well settled that the trial court has discretion to allow a witness to testify whose name is not furnished to the defendant in answer to discovery. *People v. La Coco* (1950), 406 Ill. 303; *People v. Jordan* (1967), 38 Ill.2d 83. In *Jordan,* the court stated:

> "We find that the defendant was not shown any unfairness in allowing these witnesses to testify. Moreover, we note that defense counsel was given an opportunity to interview the unlisted witnesses and did not ask for a continuance but proceeded with the trial."

■■ We think those cases are applicable to the instant situation regarding the introduction of physical evidence and hold that because there was no showing of surprise or prejudice the admission of the exhibits into evidence was not error.

■■ Even if there had been error the other evidence was sufficient to convict the defendant beyond a reasonable doubt. The complaining witness had an ample opportunity to observe the defendant as he was being robbed, and he identified the defendant's picture in the Sears security office from a board containing 60 to 65 pictures after the de-

fendant attempted to use the credit card. Even if exhibits 3 through 6 had not been admitted into evidence, the guilt of the defendant still would have been established beyond a reasonable doubt.

For these reasons the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

BURMAN, P. J., and JOHNSON, J., concur.