THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
FREDERICK C. WILLIAMS, Defendant-Appellant.

First District (4th Division)   No. 76-619

Opinion filed July 20, 1978.

Sidney A. Jones, III, of Mitchell, Hall, Jones & Black, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Joan Cherry, and Richard Heytow, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

After a jury trial in the circuit court of Cook County, the defendant, Frederick C. Williams, was convicted of armed robbery (Ill. Rev. Stat. 1973, ch. 38, par. 18—2), aggravated battery (Ill. Rev. Stat. 1973, ch. 38, par. 12—4), and attempt murder (Ill. Rev. Stat. 1975, ch. 38, par. 8—4(c)(1)). He was sentenced to 40 to 140 years imprisonment. Defendant appeals the convictions and sentencing, alleging that numerous errors committed by the trial court during the course of proceedings severely prejudiced his right to a fair trial and, thus, entitle him to a reversal.

The issues raised on review are several and concern the correctness of the trial court's determination of various objections raised by defense counsel during the course of the trial.

The facts unfold as follows: On April 22, 1974, at approximately 4 a.m., Bruno Augustine, a bakery truck delivery man, was robbed and shot three times in the head with a .22-caliber revolver while he was inside his truck preparing a delivery order. The defendant was arrested shortly thereafter and subsequently charged with the offense.

On the day the trial commenced, the People moved to amend their answer to discovery to include a wristwatch taken from the defendant at the time of his arrest. The defendant objected although he had been notified of its existence at least 2 days prior to the jury selection, at about the same time the People also became aware of its existence. The trial court allowed the motion to amend, and the defendant attributes error to this determination.

Bruno Augustine testified that at about 4:15 a.m. on the morning in question, a 20-year-old male, who was identified as defendant, entered the back of his truck while he was preparing to make a delivery and announced a "stick-up." Augustine was told to lie down on the floor of the truck while the assailant took his wallet, money, and wristwatch and then shot him three times in the back of the head. Augustine further testified that during this time he looked at defendant several times: once when he was told to lie down, again when he told him where his money was, and once again when defendant took his wristwatch. Augustine also testified that the bullets were not removed from his head because to do so would have been too dangerous. The defendant objected to this testimony and was overruled. Over defendant's objection, Augustine was then permitted to testify as to the uniqueness of the watchband on the watch which was taken from him and to make comparison with the watch he was wearing at the time of trial. The court stated in overruling the defendant's objection that "We all know that this is his watch." At this point, the defendant made a motion for mistrial, alleging judicial bias. The motion

was denied, and the defendant ascribes error to this determination and the overruling of his objections.

Augustine's truck was parked in front of Edwin Czyz's sandwich shop as this was his first delivery stop for the day. Czyz testified that he saw Augustine park his truck, open the door, and go to the back of the truck. A few minutes later he saw someone cross the street and enter the truck. He then heard three shots and saw the defendant exit the truck with a gun in his hand, looking to the right and left, and then proceeding north on Damen Avenue. He testified that he told the police officer that the assailant was a young man, between the ages of 20 and 24, weighing 150 pounds, and wearing a stovepipe hat with a red plume and a long fabric coat with dark clothes underneath. At approximately 5:30 a.m., Czyz was taken to the police station to view a lineup in which the defendant was a participant. Before the lineup could be completed, the first man in the lineup stepped forward and said, "Let's cut this out. I shot the dude." Defendant objected to this testimony because Czyz was not indicated on the prosecution's answer to discovery as a person who was present at any oral statement of the accused. The objection was overruled and defendant attributes error thereto.

On the second day of trial, defendant moved for a mistrial because an article in the Chicago Tribune, a daily newspaper, misstated some of the testimony given during the trial. The motion was denied. The trial court cautioned the jurors against reading articles in the newspapers and asked the jurors collectively whether they had read the particular article. He received no response and denied defendant's request to question the jurors individually as to whether they had read the article. The defendant attributes error to these rulings.

Officer John Butler, an evidence technician for the Chicago Police Department, testified that he had found no fingerprints belonging to defendant in his examination of the truck. The police report containing this information had not been given to defendant prior to trial. The trial court overruled defendant's motion for mistrial on that basis and defendant attributes error thereto.

Officer Louis Klisz testified that he was on patrol with Officer Topczewski at approximately 4:20 a.m. when, in response to a radio communication, they entered an alley between Oakley and Leavitt as a man exited the rear of 2231 West 23rd Place and crossed in front of the car. Klisz described him as 5 feet 9 inches in height, weighing about 150 pounds, wearing a black stovepipe hat and a long overcoat. Over defense objection, the officer testified that the person "looked" at him, or in his direction, and dropped an object on the ground. Officer Klisz identified the defendant as the man he saw in the alley. Officer Klisz's partner,

Officer Topczewski, began chasing defendant through the gangway. Officer Klisz recovered the dropped object which turned out to be a fully loaded .22-caliber pistol. Officer Klisz testified that two of the bullets were used for ballistics tests at the crime laboratory, but the reports of the ballistics tests were not available.

Officer Topczewski then testified that after chasing the defendant through the gangway two other police officers seized him as he emerged on 24th Street. Topczewski read the defendant his *Miranda* rights.

Officer Broderdorf testified, over defendant's objection, as to the details of two radio communications he received while on patrol. The offender was described in the communication as a Negro male, 5 feet 9 inches in height, wearing a black stovepipe hat and a long coat. The court overruled the defendant's objection to the testimony because the messages were not introduced to show the truth of their contents but only to show that they were, in fact, made; hence, the testimony was not hearsay. Officer Broderdorf then testified that search of the defendant uncovered a watch, $171.98, and two .22-caliber bullets.

Investigator Terrence Fabino next testified that he talked to the defendant at the police station at about 5:45 a.m., gave him his *Miranda* rights, and conducted the lineup at which Edwin Czyz identified defendant.

Doctor Phillip Friedman of Illinois Research Hospital examined Bruno Augustine in the hospital's emergency room on April 22, 1974. He found that the three bullets had fragmented and that their removal was ill-advised, although not fatal.

The defendant's motion for directed verdict was denied, and the defense called Officer Henry Porter. Defendant's motion to have Officer Porter called as a hostile witness was denied. Officer Porter testified that he talked to Augustine and Czyz at the scene of the shooting, and that Augustine had described the offender as being about 6 feet in height. Officer Porter's police report indicated that the offender left the scene in an automobile driven by another person. On the witness stand, Porter could not clearly recall the source of information regarding the automobile because there were so many people around and "everyone was telling me something." He testified that he did not receive the information regarding the automobile from Augustine or Czyz. Defendant moved to have every officer who might have given the information to Officer Porter called to testify. The motion was denied.

The defendant testified in his own behalf. He stated that he was in the area between 23rd and 24th Streets on Damen Avenue, between 3 and 4 a.m., on April 22, 1974. He had been with his ex-girlfriend at his brother's home on Damen and Division. He left there at about 2:30 a.m. and rode the Damen bus to 21st Street. He was walking toward Cermak (2200 S.),

and although he was arrested between 23rd and 24th Streets, he stated he did not cross Cermak Road. He did not see Mr. Augustine or Mr. Czyz. He testified that he went into a gangway to relieve himself and was arrested and searched when he came out of the gangway. He denied running from the police officer or having had a gun or bullets with him. At the police station he removed the keys and $171 from his pockets. He stated that this money was the remainder of $265 which he had won at Hawthorne Race Track on the previous Friday. He was then locked up and later placed in a lineup, but he was not told why he was arrested. While in the lineup, he saw someone who did not testify at the trial pointing at him. He denied being at 19th and Damen Avenue and denied ever having before seen Mr. Augustine's watch.

William L. Masterson, Executive Secretary of the Illinois Racing Board, testified in rebuttal that Hawthorne Race Track was not open on April 19, 1974, the day on which defendant testified he had won $265.

In closing argument, the prosecution was permitted, over defendant's objection, to argue that complainant Augustine was just a whisper away from death, and that the defendant is just a whisper away from a murder indictment. The court overruled defense objections that certain statements were not evidence, noting that the jury had already heard the evidence.

A defense motion for mistrial based on prejudicial remarks during closing argument was denied. A motion for new trial was denied, and the defendant was sentenced to 40 to 140 years.

The defendant first argues that he was denied timely disclosure of discoverable items, and thereby hampered in the preparation of his pretrial motion, by the trial court's permitting the State to amend its answer to discovery, after the jury had been sworn in, to include the wristwatch taken from the defendant and belonging to the complainant. He argues that the untimeliness of the disclosure of the State's intent to introduce the watch into evidence violated the spirit and purpose of the discovery rules.

Illinois case law supports the proposition that the trial court has discretion to allow into evidence items not included in the answer to discovery where it is shown that defendant is not prejudiced or surprised thereby. *People v. Jones* (1973), 13 Ill. App. 3d 684, 301 N.E.2d 85; *People v. Jiles* (1973), 13 Ill. App. 3d 245, 300 N.E.2d 803; *People v. Burks* (1965), 60 Ill. App. 2d 451, 208 N.E.2d 650.

■■ The watch in dispute was listed in the inventory taken by the police officers at the time of defendant's arrest, and a copy of that inventory was available to the defendant. Additionally, the State informed defendant of its intention to introduce the watch into evidence 2 days prior to trial. While such disclosure may not meet the timeliness standard intended by

the discovery rules, there was no surprise to defendant, and its admission into evidence was not error.

Defendant next contends that it was error for the trial court to permit Edwin Czyz to testify as to the defendant's statement made in the lineup because Czyz's name was not included in the State's list of witnesses to oral statements of defendant. Defendant cites the case of *People v. Rand* (1975), 29 Ill. App. 3d 873, 331 N.E.2d 15, wherein the only evidence against the defendant charged with burglary were oral statements made to police officers whose names were not disclosed to defendant and a thumbprint belonging to defendant. The court in *Rand* reversed the conviction, finding prejudice to defendant in the State's failure to comply with the discovery rule in the absence of overwhelming evidence of defendant's guilt.

> "We conclude that, under the circumstances here, the evidence of guilt, established by a fingerprint, is not so overwhelming that it can offset a mandatory provision or render an improper admission of the confession harmless beyond a reasonable doubt." *Rand*, at 877.

■■ The inadvertent failure to disclose Czyz as a witness to defendant's oral statements was harmless under the standard applied in *Rand*. Here, the evidence of defendant's guilt is sufficiently overwhelming to offset the failure to fully comply with the discovery rule and render the testimony harmless. Czyz was not the only witness to the statement. Officer Fabino was also present at the lineup and was disclosed as a police officer to defendant, and gave competent testimony as to the statement made by defendant. In addition, the defendant was identified by Augustine and was arrested near the scene pursuant to descriptions given by Augustine and Czyz, after having been observed dropping a weapon of the same caliber as that used in the shooting. A similar contention to that being maintained by the defendant was urged in *People v. Hudson* (1972), 6 Ill. App. 3d 1062, 1065, 287 N.E.2d 41, wherein the court found a violation of the discovery rule to be harmless error:

> "A violation of this section has been found to be harmless error where the facts have been established by other competent evidence, particularly where the evidence when viewed in its totality is conclusive as to defendant's guilt."

The defendant next ascribes error to the court's decision permitting "opinion" testimony to be given by Augustine. Augustine testified that the bullets remained in his head because it was too dangerous to remove them—testimony that defendant argues was inadmissible as the victim's opinion of his own medical condition.

■■ As a general rule, a lay witness, lacking medical expertise, cannot give an opinion or draw inferences from the facts. However, a nonexpert

can express an opinion based on his observations where it is difficult or impossible for him to reproduce for the jury the totality of the conditions perceived and where the opinion given is one that persons, in general, are accustomed and capable of making and understanding. (*People v. Burton* (1972), 6 Ill. App. 3d 879, 886, 286 N.E.2d 792, 797.) The defendant makes much of the fact that removal of the bullets would not have been fatal but was merely inadvisable, according to Augustine's physician, Dr. Friedman. He presumes that the nonfatal consequences remove the element of danger, thus, rendering Augustine's testimony false. This is not a reasonable posture to assume since Augustine's characterization was merely that it would be too dangerous to remove the bullets when the benefit of removal was balanced, by his physician, against the danger of the surgery involved. In any event, Augustine's testimony was later corroborated by the physician who examined him and made the original finding. Hence, we find no reversible error.

Officer Klisz testified that the defendant "looked" at him when he emerged from the alley just prior to his arrest. Defendant's objection to this statement as opinion testimony was overruled and the trial court rephrased the question for the assistant State's Attorney, which conduct, defendant argues, constituted judicial prejudice which prevented defendant from receiving a fair trial.

■■ We do not find the remarks to be prejudicial. It is a well settled principle that the trial judge has a duty to maintain an impartial position so as not to exhibit prejudice toward any of the parties in the eyes of the jury. Reversible error is committed where statements indicating prejudice by the trial court are shown. *People v. Sparks* (1972), 9 Ill. App. 3d 470, 292 N.E.2d 447.

A similar factual situation was presented in *People v. Nurse* (1975), 34 Ill. App. 3d 42, 339 N.E.2d 328, wherein the defendant alleged prejudice on the part of the trial judge who had advised the prosecutor to pose questions to the witness in a way to elicit admissible testimony. The court in *Nurse* held:

> "The statement by the judge in the present case was a mere clarification intended to expedite the questioning of the witness * * * and at the same time assure the defense that the court would insist upon time being established. No evidence of prejudice can be inferred from the remarks of the judge." *Nurse*, at 47.

■■ The defendant's next contention is that Officer Broderdorf's testimony as to the details of the police radio communications were hearsay and improperly admitted. We disagree. At 2 Jones Evidence §271, at 521 (1958), it is said:

> "If a statement previously made out of court is offered in evidence through a witness or a writing, not for the purpose of

establishing the truth of the matter stated, but merely for the purpose of establishing the fact that the statement was made, the evidence is admissible, if it is relevant, and it is not subject to the exclusionary impact of the hearsay rule."

Officer Broderdorf was permitted to testify as to the contents of a police radio communication he received that contained a description of the defendant as a person who had probably committed the offense in question. The testimony was offered only to prove that a radio communication had, in fact, been made, and that on the basis of the communication the officer was in the area and had probable cause to apprehend the alleged offender. The statements made by Broderdorf were relevant and not admitted to prove that the offender so described had actually committed the offense. Accordingly, we find no reversible error in the court's determination.

■■■ We also find no error in the trial court's refusal to individually question the jurors as to whether or not they had read an allegedly inflammatory newspaper article concerning the trial.

"The granting of a mistrial due to prejudicial publicity is a matter within the sound discretion of the trial court, but an abuse of that discretion will result in reversal. [Citation.] * * * and the trial court should consider the nature and contents of the news report, whether any jurors have been exposed to the news report and whether, under the facts and circumstances, exposure to the news report would or could affect the jury's deliberations. [Citations.] However, a mistrial is not warranted in every situation where the jury has been exposed to potentially prejudicial news coverage." (*People v. Henderson* (1976), 39 Ill. App. 3d 502, 506, 348 N.E.2d 854, 858.)

We find no basis to conclude that the trial court abused its sound discretion in its refusal to so poll the jurors, as it determined that the article contained nothing inflammatory. The record shows that the trial court read the article, questioned the jurors collectively as to whether they had read the article, and, receiving no positive response, admonished them to refrain from doing so. We also take note of the fact that our ability to review this issue raised by defendant is hampered by the defendant's failure to provide this court with copies of the allegedly prejudicial newspaper article.

The trial court did not err when it denied defendant's request to have Officer Porter declared a hostile witness. The defendant sought to have Officer Porter so declared in order to impeach his testimony by conflicting statements made in his police report.

■■ Supreme Court Rule 238 (Ill. Rev. Stat. 1973, ch. 110A, par. 238) provides that a hostile witness can be questioned by the party calling him

as if he were under cross-examination. This determination is clearly within the sound discretion of the trial court. (*People v. Siciliano* (1954), 4 Ill. 2d 581, 590, 123 N.E.2d 725, 730.) However, it should be noted that a witness so declared may be asked leading questions solely to refresh his recollection, not for impeachment. (*People v. Gallery* (1929), 336 Ill. 580, 585, 168 N.E. 650, 652.) In *People v. Lipscomb* (1974), 19 Ill. App. 3d 114, 311 N.E.2d 257, it was held that cross-examination of a hostile witness for impeachment purposes was error. In *Lipscomb*, the witness' testimony was impeached by the State after she repeatedly claimed a lapse of memory. For the trial court to have permitted Officer Porter's testimony to be impeached because he could not recall the names of the individuals who supplied the information contained in his report would have been error. He stated that he was certain the information had not come from Augustine or Czyz who were then present and available for cross-examination. Any other testimony as to the source of the information would have been hearsay and thereby inadmissible.

■■ The defendant was convicted of aggravated battery, attempt murder, and armed robbery. In light of the decision in *People v. Lilly* (1974), 56 Ill. 2d 493, 309 N.E.2d 1, wherein it was held that a single act of the defendant could not be used to support conviction for more than one offense, we reverse the conviction for aggravated battery. The convictions for aggravated battery and attempt murder were based upon the same acts and, therefore, the conviction for the lesser offense, aggravated battery, cannot be sustained.

The defendant next urges that Williams' sentence of 40-140 years was excessive in light of the fact that the defendant was only 19 years of age at the time the offense was committed and that he had no prior convictions. We agree.

■■ Supreme Court Rule 615(b)(4) (Ill. Rev. Stat. 1973, ch. 110A, par. 615(b)(4)) grants reviewing courts the power to reduce sentences imposed by the trial court. The Illinois Constitution of 1970 provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Ill. Const. 1970, art. I, §11.) Reviewing courts generally defer to the judgments of the trial court in sentencing matters, recognizing the fact that the trial court is normally in a better position to determine the punishment to be imposed. In *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882, the supreme court reaffirmed its long standing rule that absent an abuse of discretion by the trial judge, a sentence would not be altered upon review. The court noted that the trial court's reasoned judgment was based on individual facts of each case considering the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. However, in

this case, a young man, 21 years old, without any previous convictions, a victim of a broken home who has undergone treatment for mental problems so serious that he had contemplated suicide, a father of a young child, has been given a sentence that cannot possibly result in restoring him to any measure of useful citizenship. Our holding does not, in any way, negate the seriousness of the offense committed or of the suffering and anguish felt by Mr. Augustine. But, we have an obligation to uphold the constitutional objective of restoring this youthful offender to resourceful citizenship. We hold that a sentence of 40-140 years is an abuse of the trial court's discretion. The State urges that the holding of *Perruquet* has the effect of precluding our review of sentences imposed at trial. This cannot be true. For us to unilaterally refrain from reviewing sentencing decisions in light of the wide disparity between sentences imposed by the trial courts, as the State urges, would have the practical effect of giving unbridled discretion to trial courts in imposing sentences. Such a position negates the purpose of appellate review. In his dissenting opinion in *Perruquet*, Justice Goldenhersh noted:

> "The majority recognizes that the Constitution of 1970 provides that '[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship' [citation], and that one of the purposes of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1001—1—2) is to implement the constitutional provision. It is impossible to reconcile these constitutional and statutory provisions with the requirement that a reviewing court limit its inquiry concerning the propriety of a sentence to the narrow question whether the trial court, in imposing it, abused its discretion." (*Perruquet*, at 157-58.)

Accordingly, we reduce the defendant's sentence to 15-45 years.

The defendant raises other issues which we have considered and find to be without merit, noting that the purpose of our review is not to determine whether the record is perfect, but whether defendant received a fair trial under the law and whether his conviction is based upon evidence which established his guilt beyond a reasonable doubt. *People v. Jiles* (1973), 13 Ill. App. 3d 245, 300 N.E.2d 803.

For the foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part.

Affirmed in part, reversed in part.

ROMITI and DIERINGER, JJ., concur.