THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WILLIAM JOHNSON, Defendant-Appellant.

First District (4th Division)   No. 78-1401

Opinion filed March 20, 1980.

James J. Doherty, Public Defender, of Chicago (Suzanne M. Xinos, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Iris E. Sholder, and Gerald E. Nora, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

After a preliminary hearing, finding probable cause on the charge of murder and no probable cause as to robbery, the defendant, William Johnson, was charged by information with murder, felony murder based

on burglary, and burglary (Ill. Rev. Stat. 1975, ch. 38, pars. 9—1, 9—1(a)(3), 19—1). A jury found defendant not guilty of murder and not guilty of felony murder, but guilty of burglary. Defendant was sentenced to 4 to 15 years in the penitentiary.

We affirm.

In his appeal to this court, defendant contends (1) he was denied due process by the trial court's denial of his motion to dismiss the information charging burglary when the preliminary hearing court found no probable cause as to robbery; (2) the court erred in allowing the State to cross-examine its own witness; and (3) he was not proved guilty beyond a reasonable doubt.

The evidence presented discloses that on the evening of March 12, 1976, Mary Thomas left her first floor apartment at 3134 North Clifton, in Chicago, and took her two children to the nearby home of her friend and babysitter, Chickie Koonce. After she left Koonce's apartment, Thomas and a friend, Rita Bailey, went to a neighborhood bar at Lincoln and George Avenues. There, Thomas purchased some heroin. Approximately an hour passed before she and Bailey returned to Thomas' apartment. When she arrived at the building, Thomas saw her friend, Gary Koonce, the son of Chickie Koonce, standing outside of her apartment window. She invited Gary into the building and he entered with the two women. Upon entering, Thomas saw Dale Oliver, the building manager's son, and another man. She invited them both to come into her apartment. Thomas, Bailey, and the three men went into the apartment.

Soon after, there was a knock at the apartment door. Thomas went to the door and heard a voice command, "Open the door [b____], I don't have time to [f___] around with you; I just killed a man on the third floor." Upon opening the door, she saw William Johnson, the defendant, whom she had known for 4 weeks. She observed two stereophonic speakers on the stairs next to him. The speakers were in brown wood cabinets with black covers and measured 2½ feet by 1½ feet. Thomas recognized the speakers as those she had seen several days earlier when Orren Carlton moved them into his third-floor apartment.

Thomas shut the door but defendant persisted in his efforts to gain entrance into the apartment. The door was opened again and defendant said he wanted to speak with Gary. Defendant asked Gary whether he would help carry some "stuff" out of the building. Gary answered that he could not help, and the door was again closed. When the door was opened sometime later, defendant was gone and the speakers were no longer on the stairs.

At about 9:25 p.m., Thomas and Bailey left the apartment and went across the alley to Chickie Koonce's apartment. While walking through a

gangway leading to the Koonce apartment, Thomas saw defendant and another man, Jerry Marts, carrying a large brown box-shaped object.

On March 12, 1976, between 9 and 11 p.m., Charles Dickerson was at a tavern not far from the Koonce apartment when he saw defendant, Jerry Marts, and Gary Koonce arrive. Gary and defendant approached Dickerson; one of them offered to sell him a television set for $125. Dickerson responded that he wanted to see the television set. The men directed Dickerson to drive them to the Koonce apartment. After being shown the television set, Dickerson agreed to buy it. One of the men asked Dickerson whether he would carry a stereo set back to the tavern. Dickerson agreed to the request. He loaded a three-piece stereo set, which included two speakers in brown wood cabinets with black covers, into his car.

Dickerson drove back to the tavern, unloaded the stereo, and paid defendant or Gary $125 for the television set. Defendant and Gary then went into the home of the tavern owner, Leo Dubinski, which was located directly behind the tavern. In defendant's presence, Gary offered to sell the stereo set to Dubinski for $125. Dubinski immediately gave Gary $100 of the price in exchange for the set.

On the following day, March 13, 1976, five Chicago police detectives arrived at 3134 North Clifton. Three detectives, Officers Hack, Wilczonski, and Laska, went to Thomas' first floor apartment and conducted an interview. The other two detectives, Sergeant O'Connor and Investigator Adorjan, went to the third-floor apartment of Orren Carlton. There was no answer when the officers knocked on the door. Investigator Adorjan opened the door and found the apartment in disarray. The two officers noticed a doorway to the bedroom where they could see an empty television stand. Upon entering the bedroom, they found the dead body of Orren Carlton. There were two head wounds above and beside the left ear, and a blood-stained sweater was knotted around his neck.

Other policemen arrived at the scene. They found 11 fingerprints on various items in the apartment, none of which matched those of defendant. Nine of the prints were identified as Carlton's. The other two were never identified.

Meanwhile, Thomas related to the three detectives in her apartment all the events she witnessed the previous evening. They then took her to police headquarters where she gave a written statement.

Oliver, Marts, and Gary Koonce were also taken to police headquarters for fingerprinting and questioning. Investigator Laska and other detectives took Gary to an apartment at 1943 West Keeler where defendant was living. The police were allowed to enter the apartment. The police arrested defendant and took him into custody.

Several days later, police took Orren Carlton's mother, Bernice Lowe, to decedent's apartment. There she recognized her son's furniture which he had moved from her apartment several days before. Mrs. Lowe noticed that her son's Motorola television set and Zenith Allegro stereo system were missing.

Investigator Laska later recovered the stereo system from Leo Dubinski and the television set from Charles Dickerson. Bernice Lowe identified the recovered items as those belonging to her son.

After the jury trial, defendant was found not guilty of murder and not guilty of felony murder, but guilty of burglary.

Defendant contends he was denied due process by the trial court's denial of his motion to dismiss the information charging burglary when the preliminary hearing court found no probable cause as to robbery.

■■ ■ Defendant was arrested and charged by complaint with murder and robbery. A preliminary hearing was held, and a finding of probable cause entered on the charge of murder and no probable cause as to robbery. Upon arraignment, the State's Attorney's information charged murder, felony murder based on burglary, and burglary. A conviction was returned on the burglary count only. The basis of defendant's claim is that the State may not proceed to charge a "greater" offense than that charged in the original complaint upon which a preliminary hearing has been held. Defendant's argument is not persuasive. First, a burglary charge cannot be characterized as "greater" than robbery and murder charges considered at preliminary hearings. The robbery and murder charges do not provide less severe penalties, nor is robbery a lesser included offense to burglary. See Ill. Rev. Stat. 1975, ch. 38, pars. 9—1, 18—1, 19—1.

■■ Further, the law in Illinois is clear that where a charge by information arises from the same transaction or conduct for which the preliminary hearing court has previously found probable cause as to another offense, there need be no separate or additional hearing. See Ill. Rev. Stat. 1975, ch. 38, par. 111—2(e); *People v. Redmond* (1977), 67 Ill. 2d 242, 247-48, 367 N.E.2d 703, 705-06.

We fail to find that the preliminary court made any findings of fact with respect to a burglary charge, or that there was any unjustifiable prosecution of defendant.

Section 111—2(e) states:

"(e) Where the prosecution of a felony is by information or complaint after preliminary hearing, or after a waiver of preliminary hearing in accordance with paragraph (a) of this Section, such prosecution may be for all offenses, arising from the same transaction or conduct of a defendant even though the complaint or complaints filed at the preliminary hearing charged

only one or some of the offenses arising from that transaction or conduct." Ill. Rev. Stat. 1975, ch. 38, par. 111—2(e).

Defendant makes the additional argument that the court improperly allowed the State to cross-examine its own witness under Supreme Court Rule 238 (Ill. Rev. Stat. 1975, ch. 110A, par. 238). The rule provides, in part, that:

"The party calling an occurrence witness, upon the showing that he called the witness in good faith and is surprised by his testimony, may impeach the witness by proof of prior inconsistent statements."

It is within the discretion of the trial court to permit leading questions by the party whose witness has unexpectedly told a different story from that which he testified to at a former time. (*People v. Gallery* (1929), 336 Ill. 580, 585, 168 N.E. 650, 652; *People v. Williams* (1978), 62 Ill. App. 3d 966, 974, 379 N.E.2d 1268, 1275; *People v. Lipscomb* (1974), 19 Ill. App. 3d 114, 122, 311 N.E.2d 257, 263.) It is not error to permit the State to question one of its own witnesses by means of leading questions where there is surprise by a change in testimony. *People v. Calhoun* (1961), 22 Ill. 2d 31, 34, 174 N.E.2d 166, 167.

We agree with defendant that testimony which may be unfavorable to the party offering the witness is not, *per se*, hostile for purposes of this rule (*People v. Swimley* (1978), 57 Ill. App. 3d 116, 129, 372 N.E.2d 887, 897); nor does the fact that a witness may be hostile or unwilling, instantly make the witness a court's witness. (*Kubisz v. Johnson* (1975), 29 Ill. App. 3d 381, 383, 329 N.E.2d 815, 817.) However, when a State's witness gives surprise testimony, the State may be allowed to cross-examine the witness concerning the inconsistency. *People v. Williams* (1961), 22 Ill. 2d 498, 503-04, 177 N.E.2d 100, 103.

The State called Charles Dickerson to testify that it was defendant who offered him a television set and who accepted money for it. On cross-examination, he equivocated and said that it could have been either defendant or Gary Koonce who participated in the exchange. Dickerson testified he was drunk that evening when he purchased the television set. At that point, the State asked to examine Dickerson as if under cross-examination pursuant to Rule 238, based on the inconsistent testimony that had caused surprise. The trial court ruled that the State could question the witness only concerning his statements made on defendant's cross-examination.

The statements made by Charles Dickerson in response to original cross-examination were, in the opinion of the trial court, a surprise to the State. The statements recanted an essential portion of prior testimony; also, they were contrary to pretrial, oral, and written statements. We agree with the trial court that there was surprise, and that the State acted

in good faith, which merited allowance of examination of the witness as if under cross-examination pursuant to Supreme Court Rule 238.

Defendant asserts the State failed to prove his guilt beyond a reasonable doubt.

Whether a defendant has been proved guilty beyond a reasonable doubt is a matter for the trier of fact and will not be disturbed on review unless the evidence is so unreasonable, improbable, or unsatisfactory as to raise a reasonable doubt of defendant's guilt. (*People v. Chapman* (1977), 49 Ill. App. 3d 553, 557, 364 N.E.2d 577, 580.) Circumstantial evidence is sufficient to sustain a conviction, and the trier of fact need not be satisfied beyond a reasonable doubt as to each link in the chain of circumstances. Rather, it will be sufficient if all of the evidence taken as a whole satisfied the trier of fact beyond a reasonable doubt. *People v. Williams* (1977), 66 Ill. 2d 478, 484-85, 363 N.E.2d 801, 804.

There was no eyewitness to the presence of defendant in the decedent's apartment. Thus, the entirety of the evidence had to be taken into consideration by the jury in reaching a conclusion. Defendant's appearance with the two stereo speakers, his indication that he had been to the third floor, his participation in the sale of the missing property, and the positive identification of the property as belonging to the victim were, together, sufficient to support the jury's verdict. We find no reason to disturb the verdict reached by the jury.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LINN, P. J., and ROMITI, J., concur.