THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EDDIE WELLS, Defendant-Appellant.

First District (5th Division)    No. 80-1852

Opinion filed May 28, 1982.

Ralph Ruebner, Edwin R. McCullough, and John L. Stainthorp, all of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Casimir J. Bartnik, and Bryan D. Schultz, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a jury trial, defendant was convicted and sentenced to 12 years for robbery in violation of section 18—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 18—1). On appeal, defendant contends that (1) he was denied effective assistance of counsel; (2) there were evidentiary errors requiring reversal and remandment for a new trial; and (3) he was denied due process of law because the use of a photographic display for identification was unnecessarily suggestive and conducive to irreparable mistake.

It appears that on December 8, 1978, two men entered a food store and one, holding a gun, ordered employee Thomas Bauer from behind the checkout counter. Shortly thereafter, a third man wearing a ski mask entered and took Bauer's wallet; then, on the order of the man with the gun, Bauer opened the cash register and was told to lie on the floor, and his watch was taken by the man with the gun. Glen Simon, a customer in the store, was also told by the man with the gun to hand over his watch and to lie on the floor. After the men left, Bauer noted that the cash register was empty. On December 28, defendant was arrested and indicted on two counts of armed robbery after having been identified as the man who held the gun.

Prior to trial, the court denied motions (1) of defense counsel to withdraw, (2) of defendant to preclude the testimony of witness Hope Pablo because of the failure to produce her criminal record, and (3) to suppress witness Thomas Bauer's identification.

At trial, Bauer testified that the time of the robbery was from 1 to 5 minutes; that the man with the gun was approximately 6 feet tall, had an Afro hairstyle, sideburns, mustache, black-rimmed glasses, and was wearing a half-length brown coat; that he had previously seen the man in the store but was not certain when or how many times; that he told the police on the night of the robbery he could probably recognize the man with the gun if he saw him again in person; that he looked through three books of police mug shots after the robbery and was unable to recognize any of the robbers, but on January 30 he did identify defendant as the man with the gun and one of the other men from photographs; and that later, during an in-court lineup, he again identified defendant as the man with the gun.

Glen Simon, a customer in the store, testified that during the robbery he observed one of the robbers and heard the voice of another and that, after looking at mug shots on the night of the robbery, he could not recognize anyone but that later he identified Frank Lucius at the lineup as the person he thought was the man with the gun.

Hope Pablo, also a customer, testified that she recognized defendant

as the man who held the gun; that she knew him before the robbery; and that he was standing 6 or 7 feet from her during the holdup. On cross-examination, she stated that at the time of the robbery defendant was not wearing an Afro hairstyle and that she never knew him to wear one; that she identified Frank Lucius, and William Hearn as the man wearing the mask; and that Eddie Aikens was standing outside the store before the robbery. Pablo also testified that when the police arrived, she made no statement other than that the store had been robbed; that when she spoke with the police officers again on December 23, she gave them Hearn's name but asked that they not write it down because she was his girl friend, and they told her "they wouldn't put it down, they wouldn't have to put it down, they would just put—another man." She later admitted she did not tell the police officers at the time of the robbery the name of the man wearing the mask and that she had lied to the police on December 23. She testified further, on cross-examination, that while she was a prostitute in the summer of 1977 and intermittently since then, she was not a prostitute during the months of November and December 1978; that during the later months, William Hearn was her boyfriend but not her pimp; that their relationship began in September or October 1978 and lasted about five months; that she was arrested on a warrant in October or November 1978, but that no one had offered to drop charges against her in exchange for her testimony in the instant case. On redirect examination, she said that she first talked to the State's Attorney about testifying in the instant case on the day she was brought to court; that she did not make an identification on December 8 because she was afraid; and that the State promised her, if she testified, that they would relocate her and provide police protection.

Officer Gresham testified that he arrested defendant on December 28, pursuant to a warrant, and that police recovered a gun after defendant informed him of its location at his girl friend's house.

During trial, Pablo's criminal record was produced and the existence of the gun was disclosed for the first time, but the court denied motions to suppress any evidence of a gun and to recall Pablo for cross-examination with regard to any deal made with the State in December 1978. Defendant was found guilty of one count of robbery and not guilty as to two counts of armed robbery.

OPINION

Defendant first contends he was denied effective assistance of counsel because of his court-appointed attorney's "commitment to co-defendant William Hearn." Initially, we note that joint representation of co-defendants by one attorney does not *per se* violate a defendant's right to effective assistance of counsel (*People v. Nelson* (1980), 82 Ill. 2d 67,

411 N.E.2d 261), and that this court will not attempt to create an actual conflict of interest through conjecture or mere speculation (*People v. Berland* (1978), 74 Ill. 2d 286, 385 N.E.2d 649, *cert. denied* (1979), 444 U.S. 833, 62 L. Ed. 2d 42, 100 S. Ct. 64). As explained in *People v. Doyle* (1978), 61 Ill. App. 3d 571, 575, 377 N.E.2d 1093, 1097:

> "A finding of adverse interests cannot be based on mere assertion and unless the defendant can establish that such conflict in fact existed at trial, this court will not indulge in speculation or conjecture to determine whether separate counsel was required. (*People v. Bass* (1968), 101 Ill. App. 2d 259, 243 N.E.2d 305, *appeal denied* (1969), 40 Ill. 2d 581.) We cannot and will not create a conflict of interest out of mere conjecture as to what might have been shown."

It appears here that William Hearn had been charged in connection with the occurrence in question and that defense counsel had represented him at a preliminary hearing which resulted in his discharge on a finding of no probable cause. Prior to trial, a motion of defense counsel to preclude Hope Pablo from testifying was denied, and counsel then moved for leave to withdraw on the ground that his representation of Hearn would conflict with his representation of defendant. This was so, he stated, because Hearn's testimony would be necessary to discredit the anticipated testimony of Pablo regarding her prostitution activities and her relationship with Hearn, and to rebut any denial she might make of a deal with the prosecution to drop charges against Hearn. The conflict would result because it would be necessary for him to advise Hearn to take the fifth amendment and thus prevent testimony favorable to defendant.

■■ It is our belief, however, that there was no basis upon which the trial court could properly have concluded that there was a conflict of interest. We note that no such conclusion could have been reached until Pablo had completed her testimony, because it would not be known until then whether there would be any need to call Hearn for rebuttal. Furthermore, counsel informed the court that he had other witnesses to impeach the expected testimony of Pablo and, of course, counsel could have avoided any such possible conflict by withdrawing his representation of Hearn. Additionally, it appears that during his extensive cross-examination of Pablo, she admitted that she had been a prostitute; that she had been arrested therefore; that Hearn was her boyfriend, although she stated he was not her pimp; and that she did not tell the police that Hearn had participated in the robbery because she did not want to implicate him. Moreover, it appears that defense counsel did not believe rebuttal of Pablo's testimony was required, as he did not renew his motion for leave to withdraw after she testified and did not call Hearn or any of the other

witnesses he said were available to impeach Pablo. In light thereof, we find no impropriety in the denial of the motion of defense counsel for leave to withdraw.

We next consider the evidentiary rulings of the court which defendant suggests were erroneous. Defendant first argues that it was reversible error for the court to have allowed the prosecution to introduce into evidence a revolver not listed in pretrial discovery material and disclosed for the first time during trial.

■■ Supreme Court Rule 412(a)(v) requires the State, upon written motion of defense counsel, to disclose any "tangible objects which the prosecuting attorney intends to use in the hearing or trial or which were obtained from or belong to the accused." (73 Ill. 2d R. 412(a)(v).) The admission of physical evidence, which the State has failed to furnish in compliance with discovery, is within the discretion of the trial court and does not constitute reversible error absent a showing by defendant of resulting prejudice. *People v. Houck* (1977), 50 Ill. App. 3d 274, 365 N.E.2d 576; *People v. Acevedo* (1976), 40 Ill. App. 3d 105, 351 N.E.2d 359; *People v. Jones* (1973), 13 Ill. App. 3d 684, 301 N.E.2d 85; see also 73 Ill. 2d R. 415(g).

Seven days after trial began and during the cross-examination of Officer Heytow, the parties first learned that a gun was recovered from the home of defendant's girl friend shortly after his arrest. The State informed the court that this testimony of the police officer was the first time anyone associated with the prosecution had any knowledge of the weapon; that no evidence of a gun appeared in any report concerning the robbery in question; and that it had been determined that the police had mistakenly inventoried the gun under another case. The gun was admitted over the objection of defendant, and it is now contended that defendant was prejudiced because the defense had been planned and conducted on the basis that there had been no gun recovered; that the defense was thus seriously impaired, particularly with reference to the armed robbery charges; and that the short recess granted "could not cure the error of the disclosure of the gun."

■■ It is our view, however, that the record discloses no prejudice because (1) defendant was found not guilty on the armed robbery charges; and (2) after a 2-day recess, defendant moved to suppress evidence as to the gun and the motion was denied, but defendant did not at that time ask for additional time to reprepare his defense and he does not, in his brief here, state how he was prejudiced either by the lack of more time or in any other manner. We see no merit in defendant's suggestion that although he was found not guilty as to armed robbery, the jury might have found him not guilty as to simple robbery had the gun not been admitted.

We are thus of the belief that no prejudicial error resulted from the admission of the gun.

Defendant's second evidentiary argument is based on the failure of the court to compel the prosecution to produce the criminal history sheet of Pablo prior to trial and in refusing a motion to recall her after her purported criminal record sheet was produced.

■■ Supreme Court Rule 412 requires that the State, upon the request of defense counsel, obtain and disclose the criminal histories of its potential witnesses which may be used for impeachment purposes at trial, and that the State shall use "diligent good faith efforts" to provide such records. (73 Ill. 2d R. 412.) A reversal is not warranted absent a showing of prejudice by the defendant in the procedure which was followed by the State in its efforts to obtain criminal histories of potential witnesses. *People v. Higgins* (1979), 71 Ill. App. 3d 912, 390 N.E.2d 340.

Our review of the record shows that following a demand by defense counsel to provide him with Pablo's criminal history, an assistant State's Attorney asked the Evanston Police Department to fingerprint Pablo and to send her prints to the Skokie police where, through a fingerprint facsimile machine, they could obtain her fingerprint records. The search came back showing no arrest. Then, after the witness testified and had been extensively cross-examined, defense counsel produced a noncertified xerox copy of a rap sheet from the Chicago Police Department for a woman under the name of Marty Terry and Martha Terry—the ages, addresses and fingerprint classification of whom matched those for Pablo. The contents of the criminal history sheet included two misdemeanor prostitution convictions in 1976 and two in 1978, including a conviction on December 8, and indicated that she was sentenced and served two days for each of the convictions. The court denied defendant's request to recall Pablo for additional cross-examination with respect to her prostitution convictions.

It appears that the State furnished all information to defendant which it had obtained regarding Pablo's past criminal convictions, and we agree with the trial court that the State complied to the best of its ability. Further, we believe defendant has failed to make the requisite showing of prejudice necessary to warrant reversal. Although defendant does not argue on appeal that he could have used the misdemeanor convictions to impeach the witness, he contends that there was prejudice in not having been able to cross-examine her on specific dates of arrest and in having been prevented from showing her motive to testify falsely—particularly because the December 8 conviction was on the robbery date.

■■ Defendant was permitted to thoroughly cross-examine Pablo on her prostitution criminal history, during which she admitted her occupation as

a prostitute and admitted having been arrested. We believe that further examination as to specific dates would have been cumulative only. In addition, we reject defendant's contention that the court erred in not recalling Pablo for questioning after the receipt of her rap sheet to determine whether, when convicted on December 8, a "deal was cut" with the State for her testimony in the instant case. It is apparent from the rap sheet that she had been tried and sentenced on December 8—hours before the robbery in question took place—so that there could not have been any such deal. This is further indicated from the fact that the sentence given her on December 8 was the same given on her prior convictions. In view thereof, we are of the opinion that there was no prejudicial error in rulings complained of.

Defendant next contends that it was improper for the police to use a photographic display as a means of identification while he was in custody, and that witness Bauer's identification of him by photograph rather than by lineup was so unnecessarily suggestive and conducive to mistake as to deprive him of due process of law.

Although our supreme court has criticized the use of photographic identification where a suspect is in custody and a lineup is feasible (*People v. Jackson* (1973), 54 Ill. 2d 143, 295 N.E.2d 462; *People v. Holiday* (1970), 47 Ill. 2d 300, 265 N.E.2d 634), it has not prohibited the use of such procedures (*People v. Brown* (1972), 52 Ill. 2d 94, 285 N.E.2d 1; *People v. Duarte* (1979), 79 Ill. App. 3d 110, 398 N.E.2d 332). In *Brown*, the court reasoned that the use of photographs is often essential to effective law enforcement and stated:

> "The Court has held that each case must be considered on its own facts, and that convictions based on in-court identifications following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Simmons v. United States* (1968), 390 U.S. 377, 382-385, 19 L. Ed. 2d 1247, 88 S. Ct. 967." *People v. Brown* (1972), 52 Ill. 2d 94, 99, 285 N.E.2d 1, 5.)

Nonetheless, even a pretrial identification procedure which was unnecessarily suggestive and conducive to mistake may be admissible at trial if reliability of the identification under the totality of the circumstances is shown. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513; *People v. Brisbon* (1980), 89 Ill. App. 3d 513, 411 N.E.2d 956, *cert. denied* (1981), 451 U.S. 990, 68 L. Ed. 2d 849, 101 S. Ct. 2328.) According to *Manion*, the factors to be considered in assessing reliability include " 'the opportunity of the witness to view the criminal at the time of the crime, the witness'

degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.'" *People v. Manion* (1977), 67 Ill. 2d 564, 571, 367 N.E.2d 1313, 1317, citing *Neil v. Biggers* (1972), 409 U.S. 188, 199, 34 L. Ed. 2d 401, 411, 93 S. Ct. 375, 382.

The record here reveals that on the night of the robbery, Bauer was shown three books of mug shots but was unable to identify anyone from those photos. However, after defendant's arrest, the police held a lineup on December 29 which included the defendant, but Bauer was unable to attend. Simon was present and identified Frank Lucius as the man he thought had the gun. Then, on January 30, Officer Heytow showed Bauer a stack of 13 additional photographs—one of which was of defendant wearing curlers in his hair. From that photo, Bauer identified defendant as the man who held the gun, and on February 5 he again identified him in an in-court identification held in open court in the presence of the preliminary hearing court judge. While defendant concedes that a photograph identification is permissible where a lineup is not feasible, he argues that "it should not be permitted when the only excuse is the State's neglect or unwillingness to hold a lineup." We believe, however, that the circumstances here justify the use of the photograph display. At the suppression hearing on the identification procedures, evidence was presented that although the police had made repeated efforts to contact Bauer, they were unable to obtain his presence at the initial lineup and that his availability was limited because of subsequent severe weather conditions, his work, his school schedule, and the fact that Bauer lived in Niles and worked in Evanston while defendant lived in Chicago.

Although defendant also posits that the photographic display was unnecessarily suggestive and conducive to mistake, he fails to point to any evidence in support of this position, and we find nothing improper or particularly suggestive in the identification procedure. There is no indication that the police directed Bauer's attention to any particular photograph or that the photographs themselves were suggestive. At the suppression hearing, Bauer testified that nothing was said to him before he was shown the pictures and that he made no comments concerning them, and that he was handed a stack of about 20 photographs which he flipped through and showed Officer Heytow those he recognized in the pictures. Officer Heytow stated that the original three books of photographs which were shown to Bauer on the night of the robbery did not contain a photograph of defendant. Finally, after viewing the photographs shown to defendant, the trial court found "nothing suggestive about that procedure which would give rise to irreparable identification."

■■ Even assuming that the identification procedure was in some way suggestive, the totality of the circumstances shows the reliability of the identification, and reversal of defendant's conviction would not be required. Bauer testified that he was behind the cash register, approximately three feet from defendant, when the robbery was announced; that when he lay down, he was facing toward defendant; that he had previously seen defendant in his store on at least one other occasion; that his attention was focused on defendant because defendant was pointing a gun at him; that the robbery took from 1 to 5 minutes; and that it occurred during open hours and the store was fairly well lighted. Further, Bauer gave a detailed description of defendant to the police, and there is no indication that defendant attempted to hide his identity in any way. For the foregoing reasons, we find the evidence as to Bauer's identifications properly admitted.

Defendant also argues that during re-cross-examination of Bauer by defense counsel, the judge gave his own version of the witness' testimony and, by so doing, prejudiced defendant and denied him a fair trial.

■■ It is not an abuse of discretion by the trial court to comment or question witnesses during cross-examination where the rulings complained of seek merely to eliminate confusion and curtail repetition. (*People v. Crenshaw* (1959), 15 Ill. 2d 458, 155 N.E.2d 599, *cert. denied* (1959), 359 U.S. 997, 3 L. Ed. 2d 985, 79 S. Ct. 1133.) While it is the responsibility of the trial judge to remain impartial and to not display prejudice or favor toward any party (*People v. Williams* (1978), 62 Ill. App. 3d 966, 379 N.E.2d 1268), reversible error is committed only where it is shown that the judge has made prejudicial statements, and it is defendant's burden to show that he has been harmed by the remarks of the judge (*People v. Nurse* (1975), 34 Ill. App. 3d 42, 339 N.E.2d 328).

Defendant asserts there was prejudicial error in a statement made by the judge while defense counsel was attempting to elicit testimony from Bauer regarding the distance from the cash register to the front aisle and the distance he traveled after he was down on the ground. After asking several questions regarding distance, the court intervened and stated, "No, he did not. He said it was that total amount of distance he had traveled." Defendant suggests that the court's statement was prejudicial because it approved one version of the facts rather than allowing the jury to make up its own mind, that the comment bolstered the witness' credibility, acted as a rebuke to defense counsel, and gave the impression that the judge thought the defense was attempting to trick or confuse the witness.

■■ We believe it clear from the trial transcript that the statement of the judge merely acted to clarify and expedite the questioning of the witness

regarding the distance he traveled from the cash register and while on the ground. We find no expression by the court either of an opinion on any facts or of any belief or disbelief in the credibility of the witness.

For the above reasons, the judgment of the circuit court is affirmed.

Affirmed.

MEJDA and WILSON, JJ., concur.