THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALVIN NASH *et al.*, Defendants-Appellants.

First District (2nd Division)    No. 79-430

Opinion filed November 5, 1980.

Ralph Ruebner and Bradley S. Bridge, both of State Appellate Defender's Office, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Iris Sholder, and Armand Andry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Defendants, Alvin Nash and Joe Reed, were charged by information with robbery and aggravated kidnapping. A jury found them guilty of unlawful restraint. Nash received a three-year sentence, and Reed received a one-year sentence. Defendants appeal their convictions and ask this court (1) whether the information charge of aggravated kidnapping was defective because a judge at the preliminary hearing found no probable cause on the charge of unlawful restraint, (2) whether the trial court erred when it permitted two eyewitnesses, ages 12 and 13, to testify absent full competency hearings, (3) whether Reed was denied his right to confrontation where complainant testified to an inculpatory statement by Nash who did not testify, (4) whether defendants were prejudiced by the prosecutors' comments during closing arguments, and (5) whether defendants were proved guilty beyond a reasonable doubt.

On May 6, 1978, Nash and Reed were arrested and charged with the robbery and unlawful restraint of Alfred Watson. Two days later, at defendants' preliminary hearing, Watson testified that on the evening of May 6, defendants grabbed him by the neck, beat him, took his money and keys, and threw him in the back of his own car, which Nash then drove until he crashed into a nearby garage. The hearing judge found probable cause on the robbery charge, but no probable cause on the charge of unlawful restraint. One week later the State filed an information charging defendants with robbery and aggravated kidnapping.

Defendants' jury trial began three months later. Watson testified he was sitting in his car on the evening of May 6, when an acquaintance, Reed, approached him and offered $2 in exchange for a ride. After Watson agreed, Reed called Nash to the car, and the two drove off with Watson. Their destination was an apartment building where Nash's sister, Dorothy Turner, lived. When they arrived at the building, Reed asked Watson to accompany defendants to Turner's flat. Once there, the trio

began to play cards for money. Watson drank a shot glass of vodka, won $6 in two hands, and then announced he was returning home. He testified he left the apartment and defendants followed him to the street where Nash grabbed his neck and Reed beat upon his head. They searched his pockets and took his keys, money, and wallet. Watson stated Nash said, "We going [sic] to kill you." Defendants threw complainant into the rear of his station wagon, got into the front seat of the car, and, with Nash driving, left the scene at a high rate of speed. Nash crashed into a garage a few blocks away and a police car arrived quickly thereafter. Watson's wallet and keys were recovered on the sidewalk near the right front door of the disabled vehicle.

Darrell and Sherri Shannon, ages 13 and 12 respectively, testified they saw Nash grab Watson's neck and Reed beat complainant's head while the trio was in the station wagon. They also saw defendants throw Watson into the rear of his auto before the trio sped away.

Chicago police officer Charles Bowers testified he arrived at the scene of the collision shortly after its occurrence. Nash and Reed were arrested and searched. Bowers detected the scent of alcohol on both Watson and Reed.

Reed, testifying in his own behalf, stated that when the trio arrived at Turner's apartment they began to drink vodka. Watson won the first two hands of cards, but lost every hand played subsequently. According to Reed, Watson became drunk and accused Reed and Nash of cheating. The trio then left the apartment. When they got to the car, Watson insisted that he drive. Reed thought Watson incapable and, after a brief scuffle, he pushed Watson into the rear of the auto. In response to questions by the assistant state's attorney, Reed indicated he did not recall ever saying a fourth man was involved in the scuffle with Watson.

Dorothy Turner testified consistently with Reed's statement relative to the events inside her apartment.

The State then provided a rebuttal witness, Assistant State's Attorney Frank Stachyra, who had interviewed Reed within a few hours of the collision. Stachyra testified that Reed claimed on that day Watson suffered scratches and cuts as a result of a fourth man's attack.

After arguments of counsel, the jury found defendants guilty of unlawful restraint, but not guilty of aggravated kidnapping or robbery.

## I.

We first consider defendants' contention that the information charge of aggravated kidnapping was improper. The charge of aggravated kidnapping was added to the information's robbery charge after a preliminary-hearing judge found no probable cause on a charge against

defendants of unlawful restraint. Defendants argue their subsequent conviction on the lesser-included offense (see Ill. Rev. Stat. 1977, ch. 38, par. 2—9) of unlawful restraint is unfair in the light of the finding by the hearing judge.

Prosecution of a felony by information must be preceded by a preliminary hearing where "probable cause to believe the defendant committed *an* offense was found." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 38, par. 111—2(a).) Where, however, a charge of an offense within an information is supported by a probable cause finding, prosecution for other offenses arising from the same transaction or conduct may be pursued without a prior probable cause determination. (Ill. Rev. Stat. 1977, ch. 38, par. 111—2(e); see generally *People v. Johnson* (1980), 82 Ill. App. 3d 338, 341, 404 N.E.2d 531.) The rationale in support of this permitted "adding on" of offenses may be gleaned from language in *People v. Redmond* (1977), 67 Ill. 2d 242, 367 N.E.2d 703, *cert. denied* (1978), 434 U.S. 1078, 55 L. Ed. 2d 785, 98 S. Ct. 1272, where our supreme court states at 246: "[T]he first purpose of the [preliminary hearing requirement] provision is to insure that a defendant is not held without a prompt showing of probable cause." (See also *Gerstein v. Pugh* (1975), 420 U.S. 103, 114, 43 L. Ed. 2d 54, 95 S. Ct. 854.) *Redmond* indicates that once probable cause has been found, and the accused properly detained, the underlying reason for a preliminary hearing has been satisfied. Thus, the subsequent prosecution of related offenses by information, absent such a hearing, offend no fundamental rights. See *Redmond*, 67 Ill. 2d 242, 248.

■■ Here, defendants were arrested and presented for a probable cause determination. At that hearing probable cause was found on the robbery offense. Any offense arising from that transaction, therefore, could be prosecuted without a second hearing. The alleged offense of aggravated kidnapping arose from that transaction. Thus, the conviction of the lesser-included offense of unlawful restraint was permissible.

Defendants' exclusive reliance upon *People v. Hovanec* (1979), 76 Ill. App. 3d 401, 412, 394 N.E.2d 1340, is misplaced. Thus, absent a clear statutory prohibition, the information as filed and defendants' subsequent convictions thereon were proper.

## II.

■■ Defendants claim the trial court erred when it failed to conduct full competency hearings prior to the testimony of two witnesses under the age of 14. Defendants first contend the procedure the court used to ascertain the competency of Sherri Shannon (age 12) was an abuse of judicial discretion because it was conducted in the absence of defense

counsel and was not of record. Second, they contend Darrell Shannon (age 13) testified in the absence of any preliminary competency inquiry. The State responds[1] that the trial judge's *in camera* examination of Sherri was sufficient to establish competency. Furthermore, the State notes that defendants do not contest the children's competency, but only the court's procedure for determining it.

██ It is axiomatic in Illinois that the degree of a child's intelligence, and not his age, determines his competency to testify at trial. (See *People v. Edwards* (1973), 55 Ill. 2d 25, 33, 302 N.E.2d 306, *cert. denied* (1974), 415 U.S. 928, 39 L. Ed. 2d 486, 94 S. Ct. 1438; *People v. Ballinger* (1967), 36 Ill. 2d 620, 621, 225 N.E.2d 10, *cert. denied* (1967), 388 U.S. 920, 18 L. Ed. 2d 1366, 87 S. Ct. 2141; *People v. Davis* (1957), 10 Ill. 2d 430, 436, 140 N.E.2d 675, *cert. denied* (1957), 355 U.S. 820, 2 L. Ed. 2d 35, 78 S. Ct. 25.) A trial court's competency determination should generally include a "preliminary in-person examination" of the child witness (*People v. Crews* (1967), 38 Ill. 2d 331, 338, 231 N.E.2d 451) to ascertain whether the child is "sufficiently mature to receive correct impressions by his senses, to recollect and narrate intelligently and to appreciate the moral duty to tell the truth * * *." (*People v. Ballinger* (1967), 36 Ill. 2d 620, 622.) In the case at bar defendants cite *People v. Seel* (1979), 68 Ill. App. 3d 996, 386 N.E.2d 370, *appeal denied* (1979), 75 Ill. 2d 593, and *People v. Sims* (1969), 113 Ill. App. 2d 58, 251 N.E.2d 795, for the proposition that a court's failure to conduct a preliminary competency hearing with participation by the parties is reversible error. Our reading of the authority upon which these cases rely compels us to disagree. Counsel's participation in a preliminary competency hearing, if held, is not required. (*People v. Seel* (1979), 68 Ill. App. 3d 996, 1003-04.) Furthermore, although it is clear a preliminary examination is preferable to no inquiry, the absence, *per se*, of such an examination is not error. (See *People v. Edwards* (1973), 55 Ill. 2d 25, 32-33.) Error could arise where there has been an abuse of discretion or a manifest misapprehension of some legal principle. (*People v. Davis* (1957), 10 Ill. 2d 430, 437.) The trial court here conducted a preliminary *in camera* inquiry of Sherri Shannon's education. Both Darrell[2] and Sherri Shannon were subject to defense counsel's cross-

---

[1] The State initially argues defendants waived the competency issue because it was not specified in their post-trial motion. Defendants, however, made a general oral motion for a new trial without objection by the State. Accordingly, this issue is not waived due to any defect in post-trial procedure. *People v. Whitehead* (1966), 35 Ill. 2d 501, 503-04, 221 N.E.2d 256; *People v. Houck* (1977), 50 Ill. App. 3d 274, 280, 365 N.E.2d 576.

[2] We note that although Darrell's age was initially represented by the State to be 14 years, preliminary testimony revealed his age as 13 years. Defense counsel made no objection to his testimony.

examination. Defense counsel failed to move that their testimony be stricken for demonstrated incompetency. The record shows, on the contrary, that these witnesses, whose demeanor and ability to testify had been observed by the trial court, were competent. We find no abuse of discretion.

### III.

### A.

Defendant Reed claims he was denied his constitutional right of confrontation. At trial, the court admitted, over objection, Watson's testimony that during the scuffle Nash said, "We going to kill you." Nash did not testify. Reed argues that this testimony, conjoined with Nash's failure to take the stand, operated to deny Reed his right to cross-examine declarant Nash, and therefore admission of the testimony mandates reversal in accordance with *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620. We disagree.

This case presents facts unlike the circumstances in *Bruton v. United States*. In that case two defendants, Evans and Bruton, were tried jointly. A postal inspector testified Evans confessed to him that Evans and Bruton committed the charged armed robbery. Evans did not testify. The trial court admitted the testimony, but instructed the jury to disregard it as to Bruton's culpability because it was inadmissible hearsay against him. On review the United States Supreme Court reversed Bruton's conviction. In its opinion, the court focused upon the issue of whether, under the circumstances presented, a jury could reasonably be expected to follow the trial court's limiting instructions. Because the court found a high risk of serious prejudice, it held it could not accept "limiting instructions as an adequate substitute for [Bruton's] constitutional right of cross-examination" (391 U.S. 123, 137, 20 L. Ed. 2d 476, 485, 88 S. Ct. 1620, 1628), "where the powerfully incriminating extrajudicial statements of a codefendant * * * are deliberately spread before the jury in a joint trial" (391 U.S. 123, 135-36, 20 L. Ed. 2d 476, 485, 88 S. Ct. 1620, 1628). The instant case presents no confession, no high risk of serious prejudice, and no deliberate presentation before the jury.

■■ The instant extrajudicial statement was elicited during direct examination of Watson when the following exchange occurred:

> "Q [Assistant State's Attorney]: What was Nash doing while Reed was hitting you on the side of the head and going through your pockets?
>
> A: [Watson] He was choking me, telling me 'We going to kill you.'
>
> Ms. Bucko [Defense Counsel]: Objection.

Mr. Silver [Defense Counsel]: Objection.

The Court: Overruled."

That statement does not constitute a confession. "A confession is a voluntary acknowledgment of guilt *after* the perpetration of an offense * * *" (Emphasis added.) (*People v. Georgev* (1967), 38 Ill. 2d 165, 176, 230 N.E.2d 851, *cert. denied* (1968), 390 U.S. 998, 20 L. Ed. 2d 97, 88 S. Ct. 1202), or an admission of facts which necessarily and directly imply guilt. (See E. Cleary & M. Graham, Handbook of Illinois Evidence §502.13, at 192 (3d ed. 1979).) Nash's alleged extrajudicial statement was made during the events for which Reed was subsequently arrested. The statement consisted of no fact which necessarily implied guilt. Accordingly, the nature of that extrajudicial statement does not fall within the protection afforded by the right to confrontation as enounced in *Bruton v. United States.*

In addition, the high risk of serious prejudice which the court in *Bruton* found is not evident here. The alleged extrajudicial statement by Nash was not fabricated after the charged event. It was uttered during a scuffle in which Reed actively participated. Obviously, the statement's relevance is limited to evidence of a threat in furtherance of the unlawful restraint offense. Nevertheless, our review of the record as discussed in part V below compels us to conclude that elimination of Nash's statement would not have altered the verdict. Therefore, prejudice is absent.

■■ Furthermore, the record discloses no deliberate presentation of the utterance by the State. The State's question was proper and Watson's response was appropriate. "From the viewpoint of the Confrontation Clause, a witness under oath, subject to cross-examination, and whose demeanor can be observed by the trier of fact, is a reliable informant not only as to what he has seen but also as to what he has heard." (*Dutton v. Evans* (1970), 400 U.S. 74, 88, 27 L. Ed. 2d 213, 226, 91 S. Ct. 210, 219 (plurality opinion).) Thus, Watson's testimony regarding what he heard Nash say during the scuffle was not unresponsive. It does appear, however, to have been unexpected. This case, therefore, is clearly distinguishable from the anticipated testimony of the postal inspector in *Bruton v. United States.*

■■ ■ Finally, we note that defendant Reed does not allege error on account of admission of improper hearsay evidence. In fact defense counsel's general objection at trial was inadequate to preserve such an issue. In *People v. Trefonas* (1956), 9 Ill. 2d 92, 98, 136 N.E.2d 817, our supreme court held:

"The function of the objection is, first, to signify there is an issue of law, and, secondly, to give notice of the terms of the issue. * * * Objections to evidence should * * * point out the objection-

able features complained of. Failure to * * * giv[e] specific reason for the objection or motion to strike out such evidence generally constitutes a waiver of the right to object and cures the error, if any."

Whether Watson's testimony about Nash's utterance amounted to hearsay depends, of course, upon the purpose for which the evidence is admitted. If Watson's testimony was used to prove merely that the statement had been made, it is not hearsay. (*Dutton v. Evans* (1970), 400 U.S. 74, 88, 27 L. Ed. 2d 213, 226, 91 S. Ct. 210, 219.) If the testimony was offered to establish the truth of the matter asserted therein, and rested for its value upon the credibility of Nash, it was inadmissible hearsay. (See *People v. Rogers* (1980), 81 Ill. 2d 571, 411 N.E.2d 223.) We conclude, however, that even assuming the latter improper purpose, the error, if any, is harmless. See *People v. Pittman* (1973), 55 Ill. 2d 39, 59, 302 N.E.2d 7; see also *Chapman v. California* (1967), 386 U.S. 18, 24, 17 L. Ed. 2d 705, 87 S. Ct. 824.

### B.

■■ In conjunction with the constitutional claim above, defendants volunteer the suggestion that their trials should have been severed. Defendants did not move at any time during trial for such severance. This apparent afterthought, however, is meritless. Defendants' theories of defense were consistent and their interests did not appear adverse. Accordingly, counsel's failure to request severance does not amount to inadequate representation. (See, *e.g.*, *People v. Nelson* (1980,), 82 Ill. 2d 67, 411 N.E.2d 261.) Furthermore, the trial court was not obliged, *sua sponte*, to sever their trials. See generally *People v. Brooks* (1972), 51 Ill. 2d 156, 166, 281 N.E.2d 326.

### IV.
### A.

■■ Defendants also claim reversible error arose from comments made by the State during closing arguments. Defendants first complain the State attempted to shift the burden of proof when, in response to a defense statement noting the absence of a particular eyewitness, an assistant state's attorney stated, "Any defense lawyer in Cook County has as much subpoena power as we do." Our review of the record convinces us that the prosecutor's statement was a permissible reply (see *People v. Martinez* (1978), 62 Ill. App. 3d 7, 16, 377 N.E.2d 1222, *appeal denied* (1978), 71 Ill. 2d 612) to defendants' fair comment on the failure to produce a witness.

## B.

■■ Defendants also contend the prosecutor's personal opinion was injected into the proceedings when he called defendant Reed and another witness "boldface, insulting liars." We first note that defense counsel first used the word "liar" when characterizing the conclusion to be drawn from the State's attack upon witness Turner's credibility. Second, the assistant state's attorney's characterization of the witnesses as liars was within the context of a catalogue of evidence indicating impeached credibility and bias of the witnesses. Under these circumstances the comment was not prejudicial. (See *People v. Baptist* (1979), 76 Ill. 2d 19, 29-30, 389 N.E.2d 1200.) Similarly, defendants' claim that the State impermissibly referred to Watson's "constitutional right" of dignity is without merit.

## V.

■■ Defendants' last contention is that they were not proved guilty beyond a reasonable doubt. Three witnesses gave consistent testimony that defendants threw Watson into the rear of his car and drove off at a high rate of speed. The jury heard the evidence and weighed the credibility of the witnesses. Absent a record showing evidence so improbable as to raise a reasonable doubt of guilt, we will not substitute our judgment for that of the jury. *People v. Akis* (1976), 63 Ill. 2d 296, 298-99, 347 N.E.2d 733; *People v. Todorovic* (1977), 53 Ill. App. 3d 1, 11-12, 368 N.E.2d 471.

In accordance with the aforementioned reasons, we affirm defendants' convictions.

Affirmed.

PERLIN, P. J., and STAMOS, J., concur.