THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JACKIE CONLEY, Defendant-Appellant.

First District (5th Division)   No. 82—1465

Opinion filed September 23, 1983.

Barry Stewart Silver, of Chicago (L. Wolfe Finkle, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Marie Quinlivan, and Edward Barron, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SULLIVAN delivered the opinion of the court:

After a bench trial, defendant was convicted and sentenced to eight years for armed robbery and five years for aggravated battery.[1] He contends on appeal that (1) he was denied effective assistance of counsel; (2) the identification testimony of the complaining witness should have been suppressed; (3) his oral and written statements were involuntarily made and should have been suppressed; (4) he was not proved guilty beyond a reasonable doubt; and (5) the trial court abused its discretion in imposing a sentence of eight years for armed robbery.

At trial, Arlene Hrubecky testified that she was walking near Brompton and Halsted at approximately 1:30 p.m. on July 31, 1981, when a man standing near the sidewalk spoke to her. She could not distinguish what he said, and as she began to turn toward him a second man approached her from the front, took out a gun, and pointed

---

[1]Defendant was found not guilty of attempted murder, and the trial court entered no finding on a charge of armed violence, ruling that it merged with the armed robbery conviction. Codefendant Andrew Kahill, who has not appealed, also was convicted of armed robbery and aggravated battery. Codefendant Bobby Spicer was found not guilty on all charges.

it at her head. She heard the gun click, then the man grabbed her purse and struck her twice about the head and face with the gun. The two men ran toward a car parked on Brompton, and as they approached it the motor was started and both doors were opened. They entered the car, and as it sped away she noted that it was yellow and bore license plate number IY 7744. Immediately after the incident, she telephoned the police and gave a description of the car. She further testified that she viewed a lineup later that afternoon and identified codefendant Andrew Kahill as the man with the gun. Defendant was in the lineup, but she could not positively identify him as the second man involved because she had seen his face for only a few seconds, although she told officers that he looked like the man who spoke to her. Subsequently, Detective Graffeo took her to a room where defendant was sitting alone, and when she entered defendant approached her and apologized for what happened, stating that he was sorry he said "This is a stickup." She admitted that she was not positive defendant was the man who spoke to her at the scene until he made this statement.

Officer Granias testified that he was on patrol at 1:30 p.m. on July 31, 1981, when an unidentified person reported hearing a woman screaming in the vicinity of the 700 block of Brompton. As he proceeded to that location, he saw a cream or yellow car with four black male occupants, and noted the license number, IY 7744. At the scene, he spoke to an unidentified woman who described the car involved in the occurrence, including the license plate number. He put out a radio call on the incident and learned that the radio dispatcher had already received the license number from the victim's phone call, and that it was registered to Bobby Spicer. Twenty to thirty minutes later, he saw the car in question proceeding southbound on Lake Shore Drive, began pursuit, and forced it to the curb. As defendant, Kahill, and Spicer emerged from the vehicle, Kahill said "Don't shoot, the gun is in the trunk." Subsequently, a gun was recovered from the trunk. After being read his rights, Kahill further stated, "I walked up to her. I had the gun."

Detective Graffeo testified that after initially denying their involvement in the incident, Kahill and defendant agreed to give statements. After being read his rights, Kahill stated orally that he, defendant, Spicer, and Gregory Connerly were driving around when they saw a woman walking down the street. He (Kahill) got out of the car, approached her with a gun, took her purse, and returned to the car. Later, they stopped again, placed the gun in the trunk, and changed drivers. They went through the purse, removed some of its

contents, then discarded the purse and the remaining contents as they drove. Graffeo further testified that defendant agreed to give a written statement. He had been advised of his rights and was not physically abused or threatened in any way. After the statement was typed, defendant read it, made a correction which he initialed, and signed each page.

Defendant's two-page written statement was admitted into evidence. He acknowledged therein that he understood his rights and waived them, then stated in pertinent part:

"CONLEY: I got out of the car and seen this lady walking down the street, as I was walking past her, I said 'This is a Stick-Up.' She just smiled and kept walking. And I kept walking. Then I seen the lady struggling with another person over her bag. I heard her scream, she screamed again, I heard the car pullin' off and I ran towards the car and I got in the car.

\* \* \*

GRAFFEO: Why did you say, — 'stick-up'?

CONLEY: 'Cause I guess that's what I was fixin' to do, but I didn't do it.

GRAFFEO: Did you know the person with whom the lady was struggling over her bag?

CONLEY: Yeah.

\* \* \*

GRAFFEO: Has anyone made any threats, promises or used force on you to give this statement?

CONLEY: No."

Gregory Connerly testified for the defense that he met his friends Kahill, Spicer, and defendant at 49th and State on July 31, 1981, at approximately 11:30 a.m. They drove to Chicago Fest, but it was crowded there, so they went to the beach at Belmont for awhile, then started driving back to Chicago Fest. When they stopped for a red light, a police car pulled in front of them and the officers got out with guns drawn and ordered them out of their car. They were told they were stopped in connection with a robbery of a clothing store, and it was not until they reached the police station that officers informed them of the robbery in question. Connerly did not recall hearing anyone say "Don't shoot, the gun is in the trunk," nor did he remember telling officers that Kahill and defendant got out of the car and robbed a woman; that Spicer was driving at that time, and he (Connerly) was sitting in the back seat; and that someone went through the victim's purse, then discarded the contents as they drove. At the police station, he was placed in an interrogation room next to the

defendant and could hear conversation and activity in the adjoining room. He heard defendant say several times, "I haven't done anything," and also heard loud noises like a chair falling to the ground.

In his testimony, Kahill essentially corroborated Connerly's description of their activities on the date in question, although he could not describe the beach where the four men purportedly spent two hours, explaining that he never left the parking lot. He denied making any of the oral statements ascribed to him, maintaining that he was not involved in the crimes charged.

Defendant testified that he was at the beach with Kahill, Spicer, and Connerly at the time the crimes occurred. After his arrest he denied involvement, but officers repeatedly beat him, poked him with a black bar, pulled his chair out from under him, told him Kahill had confessed, and promised that he could go home if he signed some papers. He acknowledged that the signature on the second page of the statement was his, as well as the initials written next to a correction, but maintained that he did not read the statement and was not told what it said, but signed it because of the physical abuse and promises. He denied signing the first page of the statement containing an acknowledgment that he understood his *Miranda* rights and voluntarily waived them. Despite allegedly being poked, slapped, and kicked by officers, he had no bruises, did not seek medical treatment, and filed no complaints concerning his treatment. He admitted making the oral statement described by the victim, but asserted that he did so only after the police threatened to continue the beatings used to obtain his confession if he did not apologize.

It was stipulated that, if called, Officer Frank would testify that he spoke to the victim at the scene and was told that four black males were involved, driving a yellow car with license plate number IW 7744, registered to Bobby Spicer, and that the victim did not further describe her assailants. It was further stipulated that Officer Granias and Detective Graffeo would testify that when interviewed shortly after the incident and after being informed of his rights, Connerly stated that he was in the car with Kahill, defendant, and Spicer on the date in question; that Spicer was driving at that time, and he (Connerly) was in the back seat; that Kahill and defendant got out of the car and robbed a woman, then ran back to the car; and that, as they drove along Lake Shore Drive, someone went through the purse, then discarded it.

OPINION

Defendant first contends that he was denied effective assistance

of counsel. He supports his position by alleging that his trial counsel (a) waived both opening and closing statements and failed to present oral argument on his post-trial motions; (b) failed to move for a severance; (c) jointly represented defendant and Kahill despite the existence of antagonistic defenses; and (d) failed to make pretrial motions to suppress the victim's identification testimony and defendant's inculpatory statements.

An accused has the right to effective assistance of counsel in State criminal proceedings pursuant to the sixth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VI, XIV; *People v. Knippenberg* (1977), 66 Ill. 2d 276, 362 N.E.2d 681); however, these provisions have been interpreted to mean competent, not perfect, representation (*People v. Berland* (1978), 74 Ill. 2d 286, 385 N.E.2d 649, *cert denied* (1979), 444 U.S. 833, 62 L. Ed. 2d 42, 100 S. Ct. 64); therefore, we will consider the totality of the circumstances in determining the competency of counsel rather than focusing on isolated instances (*People v. Davis* (1981), 103 Ill. App. 3d 792, 431 N.E.2d 1210). In order to prevail on this issue, defendant must show both that his counsel, whether retained or appointed, was "actually incompetent as reflected in the performance of his duties as a trial attorney" (*People v. Martin* (1983), 112 Ill. App. 3d 486, 493, 445 N.E.2d 795, 802) and that the incompetence was sufficient to affect the outcome of the trial[2] (*People v. Taylor* (1982), 110 Ill. App. 3d 1140, 443 N.E.2d 699). Furthermore, we will not extend our review to areas involving the exercise of judgment, trial tactics, or strategy, even where appellate counsel or this court might have acted differently (*People v. Hebein* (1982), 111 Ill. App. 3d 830, 444 N.E.2d 782), nor will we indulge in mere conjecture or speculation as to the outcome of the case had representation been of higher quality (*People v. Hills* (1980), 78 Ill. 2d 500, 401 N.E.2d 523) or require counsel to do a futile act (*People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677).

■ With regard to defendant's first allegation of incompetence, we note that waiver of opening statements has been recognized repeatedly as a matter of trial strategy (*People v. Lewis* (1981), 88 Ill. 2d 129, 430 N.E.2d 1346; *People v. Vargas* (1981), 97 Ill. App. 3d 347, 422 N.E.2d 1163) as is waiver of closing argument under most circumstances (*People v. Miller* (1980), 90 Ill. App. 3d 422, 413 N.E.2d

---

[2]Defendant urges that we adopt the standard applied by several Federal courts; *i.e.*, whether trial counsel's performance satisfied minimum professional standards for reasonably competent representation. However, that standard was expressly rejected by our supreme court in *People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203.

143; *People v. McMullen* (1980), 82 Ill. App. 3d 1042, 403 N.E.2d 539), particularly in a bench trial (see *People v. Talasch* (1974), 20 Ill. App. 3d 794, 314 N.E.2d 510). Here, the prosecutor and counsel for codefendant Spicer also waived opening argument, and when the prosecutor waived closing argument, defendant's counsel decided to waive his argument in order to preclude the State from offering any rebuttal. Under the circumstances, we believe that counsel's decision was a question of tactics, and while it appears in the wisdom of hindsight that a different course might have been preferable, counsel's strategy is not demonstrative of incompetence. (See *People v. Miller*.) A similar rationale is applicable to counsel's failure to present oral argument on his post-trial motion. Furthermore, defendant has not shown how he was prejudiced, particularly in the light of the ample evidence against him; his assertion that the outcome might have been different had counsel chosen another tactic is based entirely on conjecture, and we will not speculate on what counsel's oral argument might have added to the allegations of error contained in his written post-trial motion.

■ Defendant further argues that counsel's incompetence is demonstrated by his failure to file a motion for severance. We addressed this question recently in *People v. Morrow* (1982), 104 Ill. App. 3d 995, 1006, 433 N.E.2d 985, 994, and held that failure to present a motion to sever "cannot amount to incompetence if the motion would have been unavailing, since there is no incompetence in failing to do a futile act." There, we noted that "the primary issue on such a motion is whether the defenses are so antagonistic that a fair trial can be assured only by a severance," and found no basis for such a motion where the defendants offered identical defenses. (See also *People v. Nash* (1980), 90 Ill. App. 3d 612, 413 N.E.2d 16.) Similar reasoning was applied in *People v. Royse* (1982), 107 Ill. App. 3d 326, 437 N.E.2d 679, where the court found no incompetence in failing to file a motion for severance where a codefendant's motion had been denied, indicating that any motion by the defendant also would have been unavailing. In the instant case, as in *Morrow*, defendant and Kahill offered identical alibi defenses, while Spicer relied on the State's inability to prove his participation beyond a reasonable doubt and declined to cross-examine the State's witnesses or offer any witnesses on his own behalf. It is our view that these defenses are not antagonistic, and the failure to present a motion to sever was not incompetence where no basis appeared therefor. Furthermore, we note that, as in *Royse*, a motion to sever made by codefendant Spicer was denied, strongly suggesting that any such motion by defendant would have been similarly unsuccessful.

■ Defendant also maintains that he was denied effective assistance of counsel when his attorney represented both him and Kahill. He acknowledges that joint representation of codefendants is not *per se* violative of his constitutional rights, and that he must show "an 'actual conflict of interest manifested at trial' [citation]" (*People v. Vriner* (1978), 74 Ill. 2d 329, 341, 385 N.E.2d 671, 676; see also *People v. Nelson* (1980), 82 Ill. 2d 67, 411 N.E.2d 261), but asserts that such conflict is shown where separate counsel might have pursued a different alibi defense or advanced a coercion defense. A similar argument based on what defenses "might have been advanced" was rejected by the supreme court in *People v. Echols* (1978), 74 Ill. 2d 319, 327-28, 385 N.E.2d 644, 648, wherein the court noted:

> "In short, we do not know what strategy independent counsel would have pursued, and this court has in the past refused to find hostility between the interests of criminal co-defendants based on the mere possibility that one strategy available to defense counsel would have helped one defendant at the expense of another."

Similarly, here, it is not apparent from the record before us that independent counsel would have advanced a different alibi defense or attempted to establish that defendant's participation was coerced. While in an abstract sense such defenses arguably would be possible, any finding of actual conflict of interest based thereon could only be the result of conjecture on our part, and we have repeatedly declined to indulge in such speculation. *People v. Wells* (1982), 106 Ill. App. 3d 1077, 436 N.E.2d 688.

■ Defendant's final assertion of incompetence is based on trial counsel's failure to file pretrial motions to suppress the victim's identification testimony and his inculpatory statements. He argues that Ms. Hrubecky's identification of defendant was the product of a suggestive showup, and that his inculpatory statements were "clearly" the result of coercion. However, it is well settled that "whether or not a motion to suppress should be filed in a criminal case is a matter of trial tactics and almost invariably has no bearing on the issues of competency of counsel." (*People v. Hines* (1975), 34 Ill. App. 3d 97, 100-01, 339 N.E.2d 489, 492.) With regard to trial counsel's failure to move to suppress the victim's identification testimony, we note that her inability to identify defendant at the lineup was brought out by the prosecutor and emphasized by defense counsel during cross-examination. In fact, Ms. Hrubecky never purported to base her identification of defendant on anything other than his inculpatory statement identifying himself to her as the second person involved in the incident. It is apparent from

the record that counsel chose to attack the victim's identification through cross-examination rather than through a motion to suppress, and we have repeatedly held that such a choice is a matter of judgment and not reflective of incompetence, since either option seeks to accomplish the same result. *People v. Posey* (1980), 83 Ill. App. 3d 885, 404 N.E.2d 482; *People v. Meadows* (1980), 81 Ill. App. 3d 588, 402 N.E.2d 321; *People v. Hines* (1975), 34 Ill. App. 3d 97, 339 N.E.2d 489.

With regard to the alleged involuntariness of defendant's statements, we note that it is not at all clear from the record before us, contrary to defendant's assertions, that such a motion would have been successful. Trial counsel did raise this issue at trial, eliciting testimony from defendant and Connerly in support of his theory that both defendant's oral and written statements were involuntary. However, their testimony was refuted by Detective Graffeo, who testified that defendant was not abused or threatened in any way, and by defendant's own written statement wherein he acknowledged that he understood his rights, including his right to remain silent, and voluntarily waived them, and that no threats, promises, or force were used to obtain his statement. Based on this evidence, we cannot say that a motion to suppress would have been successful. We are in accord with *People v. Henry* (1982), 103 Ill. App. 3d 1143, 1146-47, 432 N.E.2d 359, 361, wherein the court noted under analogous circumstances:

> "We have reviewed the record on appeal, including the offer of proof, and find that the record viewed in its entirety fails to disclose that the defendant's trial counsel was incompetent. Whether the defendant's motion to suppress, if filed timely, would have been successful or not is not so clear as to admit of only the conclusion that the motion would have been successful. We do not pass judgment on the merits of the defendant's motion. Nor do we hold that the defendant's counsel might not have been better advised to pursue a timely [motion] to suppress based on the facts before us. We hold merely that, based on the totality of defense counsel's conduct at trial, the defendant was not denied his right to effective assistance of counsel."

(See also *People v. Calderon* (1981), 101 Ill. App. 3d 469, 428 N.E.2d 571.) Here, we note that trial counsel presented a vigorous defense, skillfully examining his own witnesses, thoroughly cross-examining the State's witnesses, and making timely and often successful objections. Moreover, the voluntariness of defendant's statements was before the trial court as trier of fact. It was apparently trial counsel's strategy to present an alibi defense, demonstrate that the victim's identification was based entirely on defendant's statement, and prove that his state-

ments were the product of coercion. The fact that this strategy was unsuccessful is not proof of incompetence, nor can we say in the instant case, even in the wisdom of hindsight, that an alternative strategy might have been more successful, since it is apparent from the record before us that any motion to suppress would have been as entirely dependent upon the credibility of witnesses as was the strategy actually followed by trial counsel. For these reasons, we believe that defendant has failed to show that he was denied effective assistance of counsel.

Defendant next contends that the victim's identification of him was the product of a suggestive showup and, as such, should have been suppressed. He acknowledges that this issue was not raised at trial or in his post-trial motion, and therefore ordinarily would be deemed waived, but asserts that we must review his contention under the plain error exception of Supreme Court Rule 615 (73 Ill. 2d R. 615(a)). Defendant's argument rests on the premise that Ms. Hrubecky's identification of him was the product of a showup; however, it is clear from her testimony that the sole basis for her identification was defendant's unsolicited statement to her that "he was sorry he robbed her." She never purported to be able to identify him from the brief glimpse she had of the second man at the scene; in fact, at trial, while she identified him as the man who made this statement, she admitted that she presumed from this statement that he was the man who spoke to her at the scene. Since, even assuming *arguendo* that the procedure used by the officers was meant to be suggestive, it did not produce the identification in question, we find no merit in defendant's argument.

Defendant also contends that his statements were involuntary and should have been suppressed, again admitting that the issue was not raised at trial or in his post-trial motion, and he relies on the plain error exception of Rule 615. However, that exception is directed at legal rather than factual issues, and where we cannot determine from the evidence presented whether error occurred, "we will not speculate as to whether the admission of evidence was plain error." (*People v. Calderon* (1981), 101 Ill. App. 3d 469, 476, 428 N.E.2d 571, 575.) Here, defendant's testimony that his statements were the product of physical abuse, threats, and promises was refuted by the testimony of Detective Graffeo and defendant's own written statement; moreover, we do not know what further evidence the State might have adduced if called upon to prove the voluntariness of defendant's statements, or which witnesses the trial court would have found credible had it been asked to rule upon the question. It is our view that the issue must be deemed waived where, as in the instant case, the record is such that we cannot

ascertain what would have been the result of a motion to suppress. See *People v. Brown* (1982), 107 Ill. App. 3d 576, 437 N.E.2d 1240; *People v. Calderon.*

■■ ■ Defendant further contends that he was not proved guilty beyond a reasonable doubt, arguing that the evidence against him establishes no more than his presence at the scene, and is insufficient to hold him accountable for the actions of Kahill. We disagree. Evidence of conduct showing a design on the part of the accused to aid in a crime renders him accountable for the other participant's actions. (*People v. Rodgers* (1978), 58 Ill. App. 3d 719, 374 N.E.2d 721.) Here, we have defendant's own statements that he approached the victim along with Kahill and said "this is a stickup," evidencing his intent to aid in the crime. His statement adds the further details that the victim smiled and continued walking, and that after the crime occurred, he ran back to the car. While it is true that a confession, standing alone, is insufficient to support a conviction (*People v. Melquist* (1962), 26 Ill. 2d 22, 185 N.E.2d 825), the State need not prove beyond a reasonable doubt that a crime occurred exclusively by evidence independent of the confession; rather, "if the independent evidence *tends* to prove that an offense occurred, then such evidence, if corroborative of the facts contained in the confession, may be considered along with the confession in establishing the *corpus delicti*" (*People v. Willingham* (1982), 89 Ill. 2d 352, 361, 432 N.E.2d 861, 865). Defendant does not dispute that Ms. Hrubecky was robbed at gunpoint, and her testimony that she was approached by two men, that one of them spoke to her but she could not distinguish what was said, and that both men then ran back to their car corroborates the facts contained in defendant's statement, as does Kahill's statement that defendant was present when the crime occurred. Defendant further asserts that reasonable doubt is created by the victim's inability to positively identify him as the second man involved in the absence of his inculpatory statement to her and by the evidence presented that his statements were involuntarily made. However, these are questions of the credibility of the witnesses involved and the weight to be given the evidence, which are issues for the trier of fact (*People v. Berland* (1978), 74 Ill. 2d 286, 385 N.E.2d 649, *cert. denied* (1979), 444 U.S. 833, 62 L. Ed. 2d 42, 100 S. Ct. 64), and we will not substitute our judgment thereon (*People v. Hall* (1982), 104 Ill. App. 3d 1064, 433 N.E.2d 1039) where, as here, the evidence is conflicting (*People v. Rodriquez* (1981), 100 Ill. App. 3d 244, 426 N.E.2d 586), and we have had no opportunity to observe the witnesses and assess their credibility.

■■ Finally, defendant contends that the eight-year sentence for armed robbery was excessive. He asserts that the trial court failed to

give adequate consideration to mitigating factors and the nature of his involvement in the crime.

Determination of the sentence to be imposed is a matter of judicial discretion, and where a sentence is within statutory limits, the trial court's decision will not be disturbed absent an abuse of that discretion (*People v. La Pointe* (1982), 88 Ill. 2d 482, 431 N.E.2d 344; *People v. Shumate* (1981), 94 Ill. App. 3d 478, 419 N.E.2d 36); that is, unless the sentence fails to reflect "the seriousness of the offense and [give] adequate consideration to the rehabilitative potential of the defendant" (*People v. Carlson* (1980), 79 Ill. 2d 564, 587, 404 N.E.2d 233, 243). A rebuttable presumption exists that the sentence imposed is proper (*People v. Kloiber* (1981), 95 Ill. App. 3d 1061, 420 N.E.2d 870), and defendant must affirmatively show that the sentence was based on improper considerations (*People v. Walter* (1980), 90 Ill. App. 3d 687, 413 N.E.2d 542) or is otherwise erroneous in his particular situation (*People v. White* (1980), 86 Ill. App. 3d 19, 407 N.E.2d 572).

Armed robbery is a Class X felony, for which a sentence of not less than six nor more than 30 years is statutorily mandated. (Ill. Rev. Stat. 1979, ch. 38, pars. 18—2(b), 1005—8—1(a)(3).) Since the sentence imposed is within the lower range of the statutory limits, defendant must show that it is based on improper considerations or is somehow inappropriate in this case. He relies here on the latter argument, asserting that the trial court failed to give proper consideration to his lack of prior criminal involvement and his supportive family background. However, it appears from the record before us that the trial court specifically considered both of these mitigating factors in reaching its determination. Furthermore, the trial court noted the difference in the participation of the two men in imposing a lesser sentence on defendant than on Kahill, despite the strong similarity of the mitigating factors presented on their behalf. Given the nature of the crime and the factors considered by the trial court, we cannot say in the instant case that imposition of a sentence only two years beyond the statutorily mandated minimum constituted an abuse of discretion.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

WILSON, P.J., and LORENZ, J., concur.